FRANCIS M. WOOLLEY

*v.*

FLORENCE A. SCHRADER *et al.*

*Filed at Ottawa January 25, 1886.*

1. WILL—*election—as to accepting a part, and rejecting the residue.* A devisee, claiming under a will, must accept its provisions as a whole, or not at all.   While seeking to enforce provisions favorable to him, he will not be allowed to question other provisions which are against his interests.   In such case he is put to his election whether he will take under the will or not.

2. SAME—*effect of a devise as giving a partial interest in land, or the entire estate therein—as affecting the question of making an election by one of the devisees holding a residuary interest in the same land.*   Where a testator has a limited interest in land devised, and a devisee under the will has the remaining interest, and the testator devises the land to another than the one holding such remainder, it depends upon the intention of the testator to devise the whole interest or simply to give his own, whether the devisee having the residuary interest shall be put to his election to give up his interest and take under the will, or retain his interest and repudiate the will; and such intention must be gathered from the whole will, viewed in the light of the circumstances surrounding the testator at the time of making the will.

3. In this case, a father advancing money in payment of land bought by his son, took the title in his own name as a security for the payment of the sum so advanced.   The son took possession and made improvements on the land, worth $800, occupied the same until his father's death, and paid him back the greater part of the money so advanced.   The father, in his will, directed that this and three other tracts should be equally divided between his four children, subject to the limitation that the first named son should be repaid the value of the improvements made by him: *Held*, that the testator intended to devise the entire interest in the tract bought by his son, and that the son, by ratifying the will and claiming under it, was estopped from claiming the equitable title to the tract bought by him.

4. TENANTS IN COMMON—*liability for rents and profits, as among themselves.*   Under the statute of this State, which is materially different from the English statute, one of several tenants in common who has taken the "use" and "benefits" of the interests of his co-tenants, is required to account to them for their just proportion of the same, or for their share of the reasonable rental value of the premises.

5. A testator devised lands to his four children, to be divided equally between them, part of them being infants.   The older son occupied and cultivated one of the tracts for a number of years without paying any rent

therefor: *Held,* on bill for partition, that he was chargeable with the value of the use of his co-tenants' interest in the same.

6. DECREE IN PARTITION—*construed—as to the rule adopted for paying a sum due to one of several tenants in common from the others.* On bill for partition of land between four tenants in common, the court, in taking an account, found $1148 due from the estate to one of the tenants in common, and ordered a sale of the land, and out of the proceeds the payment of three-fourths of the sum so found due, to the party entitled thereto: *Held,* that this did not require that the share of each tenant should pay an equal fourth part of three-fourths, but that three-fourths of that sum should be paid out of the shares of the other three tenants in common.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. C. J. & C. C. JOHNSON, for the appellant:

At common law, one tenant in common of real estate is not liable to an action of account for the mere use and occupation. Coke on Littleton, 200, 209; 1 Bacon's Abr. 44; 4 Kent's Com. 369; 1 Washburn on Real Prop. 570.

On decree of partition, if either of the co-tenants has been in the exclusive receipt of the rents, he may be required to account, but mere occupancy will not make him liable for rent. Adams' Eq. (2d Am. ed.) 438; 1 Washburn on Real Prop. 570; Freeman on Co-tenancy, sec. 258; *Sargent* v. *Pearson,* 12 Mass. 149; *Badger* v. *Holmes,* 6 Gray, 118; *Peck* v. *Carpenter,* 7 id. 283; *Brown* v. *Wellington,* 106 Mass. 318; *Nelson* v. *Clay,* 7 J. J. Marsh. 138; *Israel* v. *Israel,* 31 Md. 120; *Kean* v. *Connelly,* 25 Minn. 222.

The court should have granted the prayer of the cross-bill, and compelled the specific execution of the contract of appellant with his father. The finding of the master and the evidence show that Francis paid the full amount advanced by his father, with interest. But even if a few dollars were owing of the interest, he would not be in such default as to authorize the heirs in rescinding the contract. *Sanford* v. *Emory,* 34 Ill. 468; *Murphy* v. *Lockwood,* 21 id. 610; *Taylor* v. *Longworth,* 14 Pet. 172.

Francis, by the devise to him, was not put upon his election. When the testator has a present interest in the estate disposed of, though not entirely his own, the doctrine of election does not apply. 2 Story's Eq. Jur. sec. 1089; *Wilbanks* v. *Wilbanks*, 18 Ill. 20.

On bill for the specific performance of a contract for the sale of land, if the vendor has disabled himself from performing, the court will not dismiss the bill, but will grant relief by way of compensation. Hovenden on Frauds, 4; Sugden on Vendors, 78, and note; *Greenman* v. *Adams*, 12 Ves. 395; *Phillips* v. *Thomson*, 1 Johns. Ch. 132; *Parkhurst* v. *Van-Courtland*, id. 273; *King* v. *Bardeau*, 6 id. 273; *Johnson* v. *Glancy*, 4 Blackf. 94; *Kelly* v. *Bradford*, 3 Bibb, 317; *Morse* v. *Ellendorf*, 11 Paige, 288; *Williams* v. *Ordway*, 106 Mass. 232.

The measure of damages in covenant for failure to convey land, is the value of the land at the time it should have been conveyed. *Buckmaster* v. *Grundy*, 1 Scam. 310; *McKee* v. *Brandon*, 2 Scam. 339; *Gale* v. *Dean*, 20 Ill. 320; *Plummer* v. *Rigdon*, 78 id. 222.

The court erred in charging him with his share of the incumbrance held by him, and requiring payment of the balance out of the entire estate.

Messrs. BENNETT & GREEN, for the appellees:

It is true that at common law a tenant in common is to account only when he receives, not takes, more than his just share. (*Henderson* v. *Eason*, 17 Ad. & El. 701.) But a more liberal construction is adopted in the following cases: *Thompson* v. *Bostwick*, 1 McMullen's Eq. 75; *Holt* v. *Robertson*, id. 475; *Valentine* v. *Johnson*, 1 Hill's Ch. 49; *Early* v. *Friend*, 16 Gratt. 47; *Buffum* v. *Lewis*, 7 Leigh, 720; *Graham* v. *Pierce*, 19 Gratt. 38; *Shiels* v. *Stark*, 14 Ga. 435; *Carter* v. *Carter*, 5 Munf. 180; *Cooper* v. *Cooper*, 19 N. J. Eq. 566; *Hancock* v. *Day*, 1 McMullen, 69; *Cutler* v. *Currier*, 54 Me.

81; *Darden* v. *Cowper,* 7 Jones, 210; *Hayden* v. *Merrill,* 44 Vt. 348.

Our statute uses language quite different from that of the English statute, making a tenant in common liable if he "shall *take and use* the profits or benefits," etc. Rev. Stat. title "Accounts."

The cases in this court recognize the liability of such tenant to account when he takes and uses more than his just share. *Rowan* v. *Reed,* 19 Ill. 28; *Howey* v. *Goings,* 13 id. 95; *Holderman* v. *Graham,* 61 id. 359; *Mahoney* v. *Mahoney,* 65 id. 406; *Louvalle* v. *Menard,* 1 Gilm. 39; *Dean* v. *O'Meara,* 47 id. 120; *Bean* v. *Scroggins,* 12 Bradw. 328.

If one takes upon himself the charge and care of a lunatic's or infant's estate without appointment, he will be chargeable as a bailiff, and must account. Willard's Equity Jur. 134; *Davis* v. *Harkness,* 1 Gilm. 173; *Casey* v. *Casey,* 14 Ill. 112; *Van Epps* v. *Van Douser,* 4 Paige, 71; *Wadsworth* v. *Connell,* 104 Ill. 369. And he is chargeable not only with what he actually received, but also with what he might have received by proper care. *Gilbert* v. *Guptil,* 34 Ill. 112; *Rowan* v. *Kirkpatrick,* 14 id. 11; Perry on Trusts, 468, 470, 471; *Bond* v. *Lockwood,* 32 Ill. 214; Hill on Trustees, mar. page 375. And with annual interest thereon. *Bond* v. *Lockwood,* 32 Ill. 314; 2 Sutherland on Damages, 238; Sedgwick on Measure of Damages, 209, note.

The answer of appellees to the cross-bill of Francis Woolley also sets up the fact that he had made his election to take under the will, and therefore can not claim against its express provisions. The doctrine of election is fully settled in the following authorities: 1 Jarman on Wills, 443; 2 Williams on Executors, 1449; 2 Redfield on Wills, 357, 362; *Wilbanks* v. *Wilbanks,* 18 Ill. 20; 1 Sandf. Ch. 387; 16 Wend. 141.

In the case of a verbal contract, to which the Statute of Frauds is successfully pleaded, the recovery is not had upon

the contract, but upon the theory of a rescinded or invalid contract, and a *quantum meruit.* This is the measure of compensation stated in the cases cited by appellant, and also by the following authorities: 2 Sutherland on Damages, 226; *Fuller* v. *Reed,* 38 Cal. 29; *McClowry* v. *Groghans, Admr.* 31 Pa. St. 22; *King* v. *Thompson,* 9 Pet. 204.

Mr. Chief Justice Mulkey delivered the opinion of the Court:

The appellees, Florence A. Schrader and Benjamin D. L. Woolley, on the 27th day of May, 1881, filed in the circuit court of Whiteside county a bill for the partition of certain lands, hereinafter mentioned, against Hartson C. Woolley, Francis M. Woolley, and others. The defendants not named were formal parties, merely, and have no interest in the questions to be determined. The appellant, Francis M. Woolley, filed a cross-bill, in which he claimed to be the exclusive owner of one of the tracts sought to be partitioned. The court, upon the hearing, found all the lands subject to partition, as prayed for in the original bill, and entered a decree accordingly, from which Francis M. Woolley alone has appealed to this court.

It appears that Benjamin F. Woolley, the father of the parties above mentioned, and through whom all of them claim, died testate some time in December, 1872, leaving Margaret Woolley, his widow, and five children, viz., Maria, Hartson C., Francis M., Florence, and Benjamin D. L., the last two being then minors; that at the time of his death he was the owner, subject to certain incumbrances and alleged equities, of five farms in Whiteside county, severally known as the "Platt Farm," the "Watson Place," the "Old Homestead," the "Gennessee Farm" and the "Jordan Farm," containing, respectively, one hundred and twenty, eighty, one hundred and sixty, eighty, and ninety-two acres. The tract last mentioned, and which is the main cause of the present controversy, was purchased in 1863, of one Alexander, for Francis,

though the deed was taken in his father's name, with the understanding that the premises were to be conveyed to Francis upon his father being reimbursed all advances made by him on the purchase. In pursuance of this arrangement, Francis took possession of the place and made valuable improvements thereon, amounting to $800 or $900. He was residing on the place at the time of the old man's death, in 1872, and continued to so reside on it, without accounting to any one for the use and occupation thereof, up to the time of filing this bill. It is also shown by the master's report, which we can not say was unwarranted by the proofs, that Francis paid to his father, in his lifetime, on account of the purchase of this land, altogether, $2297.81. A reference to the time of these payments satisfactorily shows that there was but little, if anything, due from Francis to his father on account of the purchase of the land, at the time of his death, and if there were no other facts affecting the question besides those we have mentioned, we would have no hesitancy in holding that this piece of land was not subject to partition between the devisees under the will, as is directed to be done by the decree in this case, and that the court therefore erred in not granting Francis the relief prayed for under his crossbill. But there are other important facts in the case to be considered.

By his last will and testament, Benjamin F. Woolley directed all the lands above mentioned, except the Platt farm, which constituted the then homestead, should be equally divided between his three sons and his daughter, Florence, subject to the limitation that Francis was to be reimbursed for the improvements made by him on the Jordan farm; but the cost of such improvements was not, in any event, to exceed $800. The method of ascertaining the value of the improvements was expressly provided for by the will. It directed that they should be valued by three disinterested persons, two of whom should be chosen by the executors of

the will, and the two thus selected should choose the third. Hartson and Francis were made executors of the will without being required to give bond, and upon their father's death the will was duly probated, and they formally assumed the office and trust of executors. By a further provision of the will, Francis was appointed guardian of Florence, and Hartson of Benjamin, but neither of them ever entered into bond as guardian, and they severally deny having assumed that relation or trust. The widow, within the year, renounced the provisions of the will, and elected to take under the statute. She and the minor children, together with Hartson, retained possession of the Platt farm about seven years, when that place was sold out in satisfaction of the incumbrances upon it. The Watson place was then assigned to her for dower in the remaining lands, and she thereafter accepted that as a homestead. Hartson and Francis, upon the death of their father, took charge of the entire estate, consisting of these farms and some $5000 worth of personal property, a large portion of which was squandered by them, particularly by Hartson, who is wholly insolvent. The farms, other than the one claimed by Francis, were kept rented out, or were cultivated by Hartson himself, and the rents were mainly collected by him, though a portion of them were collected by Francis. The rents were applied, in part, to the support of the widow and her family, of which Hartson and the two minor children, as we have already seen, were members.

The court, on the hearing, directed an account to be taken of the rents and profits of these farms, except the Platt farm, and except, also, the Watson place, during the time it was occupied by the widow and her family as a homestead. In stating the account, Francis was charged with what the proofs showed was a fair rental value of the Jordan place; also, with $275 received by him, in 1875, for right of way over a portion of the Platt farm. On the other hand, he was credited with all payments made by him on account of its

purchase, together with all taxes and improvements thereon. Interest was allowed on both sides of the account. Stating the account in this manner, Francis' credits amounted to $6475.12, and his debits to $5326.27, leaving a balance due him from the estate, of $1148.85. As this sum is due from the four devisees, including Francis himself, one-fourth of it should be deducted from his share of the proceeds of the sale of the land to be divided, and this the decree so orders. But it is claimed by appellant that the decree requires the other three-fourths to be paid out of the gross proceeds of such sale, which would require him to pay one-fourth of the remaining three-fourths. That, of course, ought to be paid exclusively out of the proceeds belonging to the other three devisees. If this claim was true, the decree would certainly be erroneous in the respect stated, but we do not so understand it. All of its provisions considered, we think a fair construction of it requires three-fourths of the balance found due Francis to be paid out of the proceeds of sale belonging to the other three children, and so the fund must be distributed.

The main point in the case, however, is the refusal of the court to decree, under the cross-bill, a specific performance of the contract between Francis and his father for the purchase of the Jordan farm. As already indicated, we are of opinion that at the time of his father's death Francis was entitled to a specific performance of the contract, and consequently the only question to be determined is, whether he has subsequently so acted as to estop him from asserting such right. It is a familiar principle that one claiming under a will must accept its provisions as a whole, or not at all. While he is seeking to enforce such provisions as are favorable to himself, he can not be heard to question other provisions which are against his interests. In such case the party is put to his election whether he will take under the will or not. If he accepts anything under it, he must submit to

whatever it takes from him,—in other words, he must accept it as a whole, or reject it altogether. The principle is thus stated in 2 Jarman on Wills, side page 443: "He who accepts a benefit under a will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it." By way of illustrating the principle, the author then adds: "If, therefore, a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the devisee or legatee accepting the benefit so given to him must make good the testator's attempted disposition. But if, on the contrary, he chooses to enforce his proprietary rights against the testator's disposition, equity will sequester the property given to him, for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of those rights."

The doctrine thus announced was fully recognized by this court in *Wilbanks* v. *Wilbanks*, 18 Ill. 17, and such is conceded to be the general current of authority on the subject. Under special circumstances there may be difficulty in the application of the rule, but there can never be any doubt as to the existence of the rule itself. This may happen where the testator has a moiety or limited interest in the subject of the devise, and a devisee who is sought to be put to his election has the residue. Where, in such case, the subject of the property thus circumstanced is given to a stranger in terms sufficiently general to pass the entire interest, whether the devisee having the residuary interest in it will be put to his election, will depend upon whether it was the intention of the testator to give the entire property to the stranger or to simply give him his own interest therein; and this intention must be gathered from a careful consideration of all the provisions of the will, in the light of all the circumstances surrounding the testator. If, when thus considered, it is found

the testator intended to dispose of the entire interest, then the doctrine of election applies, otherwise not.

The appellant insists that the present case falls within the latter alternative,—in other words, it is claimed, as we understand counsel, that it was not the intention of Benjamin F. Woolley, in including the property in dispute in his will, to pass anything more than what he might be justly entitled to, on account of any part of the purchase money remaining unpaid, about which there had never been any final settlement. There is a single provision in his will, already adverted to, which we regard as wholly inconsistent with this theory. If the testator had no other purpose in disposing of this property than the one suggested, how is that provision of the will to be accounted for which requires Francis to be reimbursed for the cost of improvements made by him on the place? Upon the hypothesis that the testator intended to put this place on a common footing with the other three, and to divide the four among Florence and the three boys, "share and share alike," as expressed in the will, nothing could have been more natural or consonant with justice than to have required, as he did, that Francis should be reimbursed for the cost of the improvements made upon that place; and that this is the true construction to be placed upon the will we have not a particle of doubt. That the appellant has in various ways recognized the validity of the devise of this piece of land we think is equally clear. Appellant not only qualified as executor, and assumed the duties imposed upon him as such, without in any manner protesting or questioning the devise of this land, but he and Hartson, as executors, made an inventory of it as part of the land belonging to the estate, and in pursuance of the directions of the will proceeded to estimate the value of the improvements made upon it by Francis. Other acts might be mentioned recognizing the validity of the devise of this land, but it is unnecessary to do so, for in this very suit he is assert-

ing a claim to an interest in the other lands, which we have already seen he is not permitted to do, except upon the condition he accepts the provisions of the will as a whole.

The position is next assumed, that conceding appellant to be a mere tenant in common of this tract of land, he is not liable to account to his co-tenants for the mere use and occupation of it. It is true, as claimed, that by the common law one tenant in common had no remedy against his co-tenant on account of rents and profits of the common estate, unless the latter had been appointed bailiff of the former, in which case he was liable not only for actual receipts, but also for what he might have received by the exercise of reasonable diligence, or at least without willful fault. (Bacon's Abr. 32; Coke on Littleton, 209 b.) To remedy the defects in the law in this respect, the statute of 4 and 5 Anne, chap. 16, was passed, which provided that "actions of account shall and may be brought  \*  \*  \*   by one joint tenant and tenant in common, his executors and administrators, against the other, as bailiff, for receiving more than comes to his share or proportion," etc. To make out a case under this statute, by one co-tenant against another, it was necessary for the plaintiff to allege and prove the fact of the co-tenancy, their relative interests in the subject of the tenancy, and that the defendant had received more than his share of the rents and profits. Just what constitutes receiving more than one's share, within the meaning of the statute, is not always easily determined from the authorities, nor do we deem the question of sufficient importance, so far as this case is concerned, to enter upon a review of the cases, with the view of eliminating the correct rule on the subject. Our own statute relating to the action of account is in the main modeled after the statute of Anne, and in many respects is substantially the same. Our own act, however, is clearly broader than that act. Ours makes any co-tenant liable who "shall *take* and use the profits or benefits" of the common estate "in greater proportion than

his or her interest," liable to account. The word "take" does not occur in the English statute, and much significance is attached to its absence by Lord COTTENHAM, in *Henderson* v. *Eason*, 17 Ad. & El. (N. S.) 701,—the leading English case on the subject. That case holds there is no liability to account, under the statute of Anne, for mere use or occupation, however profitable it may have been; that it is only where the tenant receives from *another* more than his share of the money or other thing on account of the subject of the tenancy, can he be held liable to account to his co-tenants. Thus it is said in *Henderson* v. *Eason, supra,* a co-tenant "is to account when he *receives*, not *takes*, more than comes to his just share." And further on it is added: "But when we seek to extend the operation of the statute beyond the ordinary meaning of the words, and to apply it to cases in which one has enjoyed more of the *benefits* of the subject, or made more by its occupation than the other, we have insuperable difficulties to encounter." This view is not only the settled doctrine of the English courts, but it is the prevailing doctrine in this country, where the statute of Anne has simply been adopted; but where, as in our own State, it has been adopted with material modifications, it has led to corresponding differences in the rulings of the courts of this country. While it was supposed, in the case just cited, that an attempt to extend the statute of Anne to cases where there had been a mere enjoyment of benefits, would lead to "insuperable difficulties," yet by the express terms of our own act the tenant is required to account to his co-tenant for "benefits" as well as profits, and we fail to perceive any difficulty in giving effect to this provision of the statute that may not arise in any case where the value of anything is to be ascertained from opinions of witnesses or extrinsic circumstances,—particularly in a case like the one before us. The farm in question belonged to the four children, "share and share alike." It would, as shown by the proofs, have readily rented to others

at $315 per annum.   Its use was worth just that amount of money.   Appellant, instead of letting the place to others, and collecting annually that amount of money as rental, and paying over to his brothers and sister their respective shares, appropriated the entire use of the farm to himself.   To the extent of their interest it was, in effect, appropriating to his own use that amount of money belonging to them, and the question is, shall he account for it?   We have no hesitancy in saying he shall.   In the language of our own statute, he has taken the "use" and "benefits" of their interest in the land, and it is nothing more than simple justice that he should account to them for it.   The propriety of the rule here announced is well illustrated by the facts in this case.   If the contrary rule should be adopted, minor children, in cases like this, would be left at the mercy of the older children.

The other points made in the case we do not regard as of sufficient importance to require special notice, or as affording any ground for a reversal of the decree.

For the reasons stated the decree will be affirmed.

*Decree affirmed.*