Mary D. DeVitto, Appellee, *vs.* William J. Harvey *et al.*—(Bertha Hirsch *et al.* Appellants.)

*Opinion filed February 21, 1914.*

1. Wills—*widow accepting benefits under will adopts the whole instrument.* Where the widow accepts the provisions of the will for her benefit she must be held to have adopted the whole instrument and renounced every right inconsistent with it.

2. Same—*when widow's interest ceases at marriage.* Where a will provides that the use of the testator's real estate shall go to his widow for her maintenance and support during her life while she remains unmarried, a subsequent provision directing equal distribution of the real estate between the testator's son and daughter after the death of the widow does not enlarge the widow's interest to an unconditional life estate, and upon her subsequent marriage the remainder to the children is accelerated and she ceases to have any interest in the land by way of homestead, dower or otherwise.

3. Tax deeds—*holder of an invalid tax deed is entitled to reimbursement.* The holder of a tax deed set aside in a partition proceeding is entitled to reimbursement for his lawful expenditures for taxes, interest and costs notwithstanding the tax deed is invalid for irregularities, where there is no fraud or bad faith connected with the transaction.

Appeal from the Circuit Court of Cook county; the Hon. E. M. Mangan, Judge, presiding.

C. E. Cruikshank, and Israel Cowen, (William W. Kent, of counsel,) for appellants.

P. R. Boylan, and W. R. Ramsay, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

Patrick Harvey died testate in Chicago, Illinois, July 22, 1897, leaving surviving him Bertha Harvey, his widow, Mary D. Nagle, daughter, and William J. Harvey, son, as his only heirs-at-law. His will, dated February 19, 1896, is as follows:

"I, Patrick Harvey, of Chicago, Cook county, Illinois, do hereby make this my last will and testament:

"After the payment of all my debts I give and bequeath to my wife, Bertha Harvey, all my personal property; also for her maintenance and support during her life while she remains unmarried, the use of all real estate owned by me at the time of my death. If my wife, Bertha Harvey, should prefer to take what she would be entitled by law, let it be so done. If she does not do so, all the real estate is to be divided equally between my son and daughter, William J. Harvey and Mary D. Nagle, wife of Michael Nagle, after the death of my wife, Bertha Harvey. It is my wish that my remains be buried in Graceland cemetery in accordance with Masonic rites. I hereby appoint my wife, Bertha Harvey, without being required to give bonds, to be executrix of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof I have hereunto subscribed my name and affixed my seal the 19th day of February, in the year of our Lord 1896.                    Patrick Harvey."

At the time of his death testator was the owner in fee of lots 25, 26, 27 and 28 in Charles F. Thrapp's subdivision of the west half of the south-west quarter of the south-west quarter of the south-east quarter of section 27, township 38, north, range 14, east of the third principal meridian, referred to in the briefs as the Seventy-ninth street property; also lot 38 in sub-lot 4 of a subdivision of block 17 of Canal Trustee's subdivision of section 33,

township 39, north, range 14, east of the third principal meridian, which is 3629 South Dearborn street and is referred to in the briefs as the Dearborn street property. There was a cottage on the Dearborn street property, which was occupied by testator and his family as a residence at the time of his death, and continued to be so occupied by the widow after the death of testator until May, 1907. At that time the neighborhood had so changed as to make the property undesirable as a residence. The Seventy-ninth street property consists of vacant lots. The daughter, Mary D. Nagle, 'after the death of her father married Nicholas DeVitto, and she is now Mary D. DeVitto. In August, 1908, the widow married Herman Hirsch, and in December of the same year Mary D. DeVitto filed the bill in this case for partition of the premises and for an accounting. The widow of the testator, (now Bertha Hirsch,) her husband, Herman Hirsch, William J. Harvey, Robert Taylor, tenant of the Dearborn street property, and Nicholas DeVitto, who is not now living with his wife and whose whereabouts are unknown, were made parties defendant. The claim of complainant in her bill as amended was, that the only interest testator's widow had in the real estate she acquired under the will; that this interest was an estate for life provided she did not re-marry, and that upon her re-marriage her estate in said real property terminated, the rights of the remainder-men were accelerated, and they became at once entitled to the possession and partition of the property. The widow paid the taxes on the Seventy-ninth street property until 1904. In 1905 it was sold to George J. Lawton for taxes, and a tax deed was subsequently issued to him therefor. Lawton received his tax deed December 6, 1907, and within a few days thereafter he executed a quitclaim deed for the premises to Herman Hirsch, who afterwards married the widow of Patrick Harvey. The bill alleges the tax deed is invalid, and sets up numerous reasons upon which this claim is based. Complainant in her

bill offers to pay Herman Hirsch such sum or sums as the court finds due him on account of money paid out by Lawton and said Hirsch in and about the sale and purchase of the premises for taxes and special assessments, and all subsequent taxes and special assessments paid thereon, provided the court finds the said Hirsch is entitled to be reimbursed therefor. The bill also charged the widow with having committed waste and that she had abandoned the homestead. After the bill was filed a receiver was appointed and the property placed in his possession and control.

In her answer Bertha Hirsch denied that by reason of her marriage her right and interest in the real estate were terminated and denied the right of complainant to partition. She also denied she had committed waste or that she had abandoned the homestead, but admitted she had removed from it because the neighborhood had become undesirable on account of its being surrounded by the residences of immoral negroes.

After replication filed the cause was referred to a master, and upon his report the chancellor entered a decree finding that the widow elected to take under the will of her husband, and that upon her marriage with Herman Hirsch all her interest and estate in the property described in the bill ceased and determined and the heirs of Patrick Harvey immediately became entitled to the possession, use and control thereof, free from any dower or homestead right of said Bertha Hirsch. The court further found that the tax deed issued to Lawton and the quit-claim deed from him to Herman Hirsch were void and clouds upon the title, which should be removed and set aside, but that Herman Hirsch was not entitled to reimbursement on account of taxes paid on the premises. The decree further found that Bertha Hirsch was liable to account to the heirs of Patrick Harvey for the use and possession of the Dearborn street property from the time of her re-marriage until the appointment of the receiver. The amount is stated in one

place in the decree to be $170 and in another place to be $145.10. Bertha Hirsch and her husband, Herman Hirsch, have prosecuted this appeal from that decree.

The two questions presented for determination by this appeal are: (1) What estate and interest did the widow of Patrick Harvey take in his real estate under the will? (2) Is Herman Hirsch entitled to reimbursement of the sums expended in acquiring the tax deed and paying taxes on the Seventy-ninth street property?

The will of Patrick Harvey was admitted to probate in October, 1897, and letters testamentary issued to his widow, now Mrs. Hirsch. She took all the personal estate, occupied the Dearborn street property as a residence for about ten years, and then, on account of a change in the character of the neighborhood, removed to another location but continued to rent and collect the rents from the Dearborn street property. In September, 1900, she filed her final report as executrix and was discharged. She contends the several parts of the will are inconsistent, but that they are so intermingled and interdependent that the presumed intention of the testator will be defeated if one part is given effect and the other rejected; that manifest injustice would result from such construction and the will should therefore fail altogether. Such a rule has sometimes been applied in cases where some trusts created by a will are legal and some illegal but so connected as to constitute one entire scheme, so that the presumed intention of the testator would be defeated if one part of the will were rejected and another part retained. Clearly, this is not a case for the application of any such rule. There are no invalid or illegal parts of this will, nor, we think, any inconsistent provisions.

It is also contended that the will first gives the widow a life estate in the real property upon condition that she remain unmarried, but that the testator in the last sentence of the same clause indicated his intention that his wife should have an unconditional life estate in the property, for

he provided that it should be divided between his son and daughter after the death of his widow. We do not think that is a reasonable construction to place upon the will. When the whole instrument is considered together, it seems plain the intention of the testator was that his wife should have all the personal property and a life estate in all the real property, provided she remained unmarried. The estate given her was to determine upon her death if she remained unmarried and upon her marriage if she chose to re-marry. The provision that the real estate should be equally divided between the testator's children at the death of his widow could not by any reasonable construction be held to mean anything more than that at the determination of the widow's estate, whether by death or re-marriage, the remainder was to vest in possession in the testator's children. The widow's estate would have continued for life had she remained single. By her re-marriage the remainders were accelerated. The will contained the suggestion that if she preferred to take what the law would give her in the absence of a will instead of the provision made for her in that instrument she might do so, but this provision was unnecessary, as she had the right to renounce the will and elect to take under the statute. It is well settled that a person who accepts a benefit under a will adopts the whole instrument and renounces every right inconsistent with it. *Woolley* v. *Schrader,* 116 Ill. 29; *Gorham* v. *Dodge,* 122 id. 528; *Stunz* v. *Stunz,* 131 id. 210.

The circuit court correctly held that by accepting the provision made for her by the will the widow of Patrick Harvey relinquished all claim inconsistent with such provision; that her interest in the real estate was a life estate determinable upon re-marriage, and that upon such re-marriage she ceased to have any further interest in the real estate, either by way of homestead, dower or otherwise.

We think the tax title was invalid on account of irregularities in the procedure in obtaining it, but we do not

agree with the chancellor that Herman Hirsch was not entitled to reimbursement of the amount paid out by him in procuring the tax title and for taxes and assessments paid upon the property. Apparently the theory upon which this part of the decree was based was, that Herman Hirsch (who at the time of obtaining the tax title had not married the widow of Patrick Harvey) and said widow conspired to let the property be sold for taxes in order that Herman Hirsch might obtain title to it. This theory, in our judgment, is not sustained by the evidence. The property consisted of vacant lots and the widow paid the taxes thereon up to 1904. She testified she had but little means and the property was not income-producing. Both she and Herman Hirsch denied that there was any understanding between them about the purchase of the property at the tax sale.

The decree is reversed in part and the cause remanded to the circuit court, with directions to take an account of the amount paid by Herman Hirsch, with interest thereon, and decree payment to him of the amount so found due and make the same a lien against the property. In other respects the decree is affirmed.

*Reversed in part and remanded, with directions.*