McKAMIE *v.* BASKERVILLE.

|86  459|
|110  179|

*(Nashville.* February 28th, 1888.)

DESCENT AND DISTRIBUTION.  *Bastards.  Effect of legitimation.*

Bastard children legitimated by decree of the County Court are capable, under our statutes, of inheriting both *lineally* and *collaterally*, in the same manner as if they had been born in lawful wedlock.

Code cited: §§ 4385–4387 (M. & V.); §§ 3640–3642 (T. & S.).

Cases cited and approved: Swanson *v.* Swanson, 2 Swan, 459; 77 Pa. St., 81 (18 Am. Rep., 428).

---

FROM SUMNER.

---

Appeal in error from Circuit Court of Sumner County.   A. H. MUNFORD, J.

C. R. HEAD for McKamie.

S. F. WILSON for Baskerville.

LURTON, J.   George A. Baskerville, the father of three natural children, applied in 1857 to the County Court of Sumner County to have their names changed, and to have them legitimated. The proceeding was by petition, in accordance with the Act of 1805, Chap. 2, being the law then in force, and resulted in a decree declaring them

legitimate and heirs at law of their father, the petitioner.

Since this proceeding their father has died, and subsequent to his death William Baskerville, a brother of their said father, has died intestate, and these three legitimated children claim to be entitled to share in the estate of William Baskerville, as lawful nephews, and therefore heirs at law and distributees, he having left no issue.

The question to be determined is as to the legal effect of the decree of legitimation. It is not disputed but that it enables them to inherit from their father, but it is insisted that, while they become entitled to stand as lineal heirs, yet they have ·not such inheritable blood as will enable them to take from collaterals. The question is a new one in this State. At common law a bastard had no inheritable blood, and even the subsequent marriage of the parents did not impart to it an inheritable quality. But in the absence of constitutional inhibition, the legislative power is entirely competent, by general laws, to remove the taint of illegitimacy, and to confer upon such unfortunate issue such inheritable blood as may be deemed expedient.

The Act of 1805, Ch. 2, has been carried into the Code, with an amendment originating with the Code, declaratory of the effect of such legitimation. This amendment is as follows:

" The effect of legitimation is to create the relation of parent and child between the petitioner

and the person legitimated as if the latter had been born to the former in lawful wedlock." Code, § 3640–42.

The decree of legitimation in the case now under consideration was pronounced before the enactment of the Code, and hence the declaratory section, above quoted, was not in force at the time these claimants were legitimated. We are, therefore, to consider and determine the effect of legitimation before the adoption of the Code. The Act of 1805 clearly authorized a parent to *legitimate* his bastard children, and to thereby make them "heirs or joint heirs." By a decree obtained under that act they not only became heirs but they became *legitimated*. To legitimate is to make lawful, to legalize, and in the case of an illegitimate the plain and unambiguous meaning is "to render legitimate," "to communicate the rights of a legitimate child to one that is illegitimate; to invest with the rights of a lawful heir."—Webster.

Thus the plain purport of the decree authorized by the Act of 1805 was to render an illegitimate child a legitimate, and to place him upon the same footing as if born in lawful wedlock. He was thereby placed in the state and condition of a legitimate, and became the lawful child and prospective heir of the natural father. Thus the declaratory amendment of the Act of 1805 only places upon the old law the plain and obvious meaning of legitimation, and does not in any way add to the force or effect of the statute thereby

amended. There is no room for the contention that the legitimation thus effected by law is limited to the lineal line. The legitimation has the effect to put the legitimated in the status of one born in lawful wedlock. We have to give these statutes their plain and obvious meaning, regardless of any opinion we have as to their policy. It is not to be supposed that the Legislature intended to limit the effect of such legitimation to lineals, and that as to collaterals the taint of bastardy should still adhere. In a well-considered case, where it was insisted that the effect of legitimation was only to enable the legitimated to take as *heir*, and not as *distributee*, this Court held that it was not. necessary that the act should declare that the person legitimated should take as next of kin as well as heir, for this result would follow by implication of law from his being constituted a legal heir. " When placed by law in the state and condition of heir, and invested with the character and capacity of heir, all the rights, privileges, and legal consequences incident to that relation and character are tacitly conferred, and consequently the right of succession to the personal estate of the intestate." *Swanson* v. *Swanson*, 2 Swan, 459.

One legitimated becomes as one born in lawful wedlock. These natural sons became the lawful, legitimate sons of George A. Baskerville, and in all respects are, so far as inheritable blood, to be treated as if born to him lawfully. Statutes au-

thorizing legitimation are not uncommon. The very able and industrious solicitor opposing the claim of these legitimated sons has not been able to furnish us with any authority limiting the effect of legitimation where such limitation was not contained in the act itself. Our own researches have been likewise fruitless. The only case to which we have been referred is that of *McGunigle* v. *McKee*, 77 Pa. St., 81 (S. C., 18 Am. Rep., 428.) The question was only indirectly involved, but the reasoning and conclusion of the Court were in accord with the view we have here reached.

The decree of the Chancellor holding that the legitimated were entitled to take as heirs and distributees of their uncle, William Baskerville, is affirmed.