Scott v. Wilson.

## SCOTT *v.* WILSON *et al.*

### (*Nashville.*    December Term, 1902.)

**1. BASTARDS. Legitimation. Effect of.**

Legitimation of illegitimate children by decree of the county court, as provided by statute, removes the taint of bastardy and gives such children the same inheritable blood as if they had been born legitimate. (*Post, pp.* 179-180.)

Code construed:   Sec. 5408 (S.); 4387 (M. & V.); 3642 (T. & S. and 1858).

Cases cited:   Swanson v. Swanson, 2 Swan, 446; McKamie v. Baskerville, 86 Tenn., 459.

**2. SAME. Property of—Mother's right to inherit, not affected by legitimation. Case in judgment.**

But where an illegitimate child was legitimated by his putative father on an application to the county court, as provided by the statute, such proceeding did not alter his relation to his mother nor affect her right to inherit from him. As to his mother, he was still illegitimate and hence on his death intestate, without child or children or wife, property inherited by him from his father descended to his mother to the exclusion of the heirs at law of his father. (*Post, pp.* 176-182.)

Code cited and construed:   Sec. 4166 (S.); 3273 (M. & V.); 2423 (T. & S. and 1858).

Cases cited:   Lawson v. Scott, 1 Yerg., 92; McCormick v. Cantrell, 7 Yerg., 615.

FROM COFFEE.

Appeal from the Chancery Court of Coffee County.—
WALTER S. BEARDEN, Chancellor.

R. W. GREEN and J. E. WILLIS, for Scott.

J. L. EWELL and B. P. BASHAW, for Wilson et al.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

This record presents a question in respect of the right
of inheritance from a bastard who had been duly legiti-
mated.

The bill alleges that complainant, John Scott, is the
brother of one Andrew J. Scott, who died in Coffee
county, Tenn., in August, 1900, unmarried and intestate.
He left an estate comprising 240 acres of land and some
personalty, altogether estimated to be worth $5,000.
The decedent left surviving him one child, Andrew
Edwin Scott, born out of lawful wedlock, but duly legiti-
mated by the Coffee county court at its April term, 1888.
This legitimated son went into possession of his father's
estate, and became the absolute owner thereof.

Andrew Edwin Scott died in 1901, when about 14
years of age, unmarried and intestate, but leaving three

Scott v. Wilson.

half-brothers, Arthur Bywater, Allen Jordan, and Frank Wilson, sons of his mother, who had been three times married. It is alleged that Andrew Edwin Scott was begotten by Andrew J. Scott upon the body of the widow Bywater. Her second husband was one John B. Jordan; and her third, one Frank Wilson. Mrs. Blanch Wilson and her husband Frank Wilson were made parties defendant to this bill.

The present bill was filed by John Scott, in his own behalf and in behalf of the other brothers and sisters of Andrew J. Scott, deceased, against Blanch Wilson and her three legitimate children, Arthur Bywater, Allen Jordan, and Frank Wilson, for the purpose of asserting title to the estate of Andrew Edwin Scott, deceased. A demurrer on behalf of Blanch Wilson and husband was interposed to the bill, assigning for cause, viz.:

(1) That Andrew Edwin Scott was the illegitimate son of the defendant Blanch E. Wilson.

(2) That he was the owner of the property described in the bill.

(3) That he died intestate, unmarried, and without issue. It follows, under the laws of Tennessee, that his mother, Blanch Wilson, inherits his estate, both personal and real, and that the complainant and his brothers and sisters have no interest therein.

The guardian *ad litem* for the three legitimate sons

110 Tenn—12

of Mrs. Blanch Wilson also demurred, assigning the following causes, to wit:

(1) That Andrew Edwin Scott was the owner of the land described in the bill.

(2) That he died intestate, without wife or child.

(3) That he had been legitimated.

(4) That he left no brothers nor sisters of the whole or half blood of the paternal line.          .

It therefore follows, under the laws of Tennessee, that the half-brothers inherit his realty, and that they, with their mother, said Blanch Wilson, inherit jointly the personal estate, and that the complainant, John Scott and his brothers and sisters named in the bill, have no interest in the estate of Andrew Edwin Scott—neither in the real nor personal property, etc.

The court of chancery appeals affirmed the decree of the chancellor in overruling the demurrer, virtually holding that the brothers and sisters of Andrew J. Scott, the father of Andrew Edwin Scott, were entitled to the property.

The demurrants appealed to this court, and the question for our decision, upon the facts stated in the bill, is, who are entitled to the estate of Andrew Edwin Scott? The contention is that neither the mother, Blanch Wilson, nor her legitimate children, are entitled to any part of the estate, because the said Andrew Edwin Scott was legitimated by his father, Andrew J. Scott, and that complainants are his next of kin.

The first question for determination is, what was the

Scott v. Wilson.

status of Andrew Edwin Scott at his death, with respect to legitimacy? It is conceded that in 1888 the said bastard, upon the petition of his putative father, Andrew J. Scott, was legitimated by the county court of Coffee county. The statute provides that the effect of the legitimation is to create the relation of parent and child between the petitioner and the person legitimated, as if the latter had been born to the former in lawful wedlock.

It is the settled law that illegitimate children, legitimated as provided by statute, are capable of inheriting realty as heirs, and of receiving personalty as next of kin, both lineally and collaterally, in the same manner as if they had been born in lawful wedlock. The legitimation removes the taint of bastardy, and gives such children the same inheritable blood as if they had been born legitimately. *Swanson* v. *Swanson*, 2 Swan, 446; *McKamie* v. *Baskerville*, 86 Tenn., 459, 7 S. W., 194.

But the question remains, how is the estate of a legitimated bastard transmitted? Section 4166, Shannon's Code, provides, viz.: "When an illegitimate child dies intestate without child or children, husband or wife, his real and personal estate shall go to his mother, and if there be no mother living, then equally to his brothers and sisters by his mother, or the descendants of such." Acts 1851-52, c. 39.

The court of chancery appeals was of opinion that this statute was rendered nugatory by the decree of legitimation. Said that court, viz.: "By virtue of the

decree, he (Edwin Scott) ceased to be a bastard, and became a legitimate child of Andrew J. Scott, and is therefore not an illegitimate child. He cannot be half legitimate and half illegitimate, under the law, but becomes by the decree legitimating him a fullfledged legitimate child of Andrew J. Scott; and to this extent the legal status existing between him and his mother and half-brothers has been wiped out or cured by statute, and in a legal sense he becomes a stranger to them, so far as inheritable blood from him is concerned. He could inherit from the brothers and sisters of his father. Why not they from him?"

It was upon this line of reasoning that the court of chancery appeals held that the brothers and sisters of the putative father of the illegitimate took the property to the exclusion of the natural mother. We think the court of chancery appeals was in error in its decree. The status of this illegitimate son towards his mother was not changed or in any way affected by the legitimation proceedings in the county court. The statute expressly declares that the effect of the legitimation is to create the relation of parent and child between the petitioner and the person legitimated, as if the latter had been born to the former in lawful wedlock. Shannon's Code, sec. 5408. The mother was not a party to the proceeding and hence as to her the child was not legitimated, as if the latter had been born to the former in lawful wedlock. It is very clear that the statute does not create this relation, except between the petitioner

and the person legitimated.   We think the primary object of this statute was to benefit the child, and to enable him to inherit, and not to change the statute so as to prevent the operation of the statute giving his estate to his mother.

As illustrating the idea that the decree of legitimacy does not change the status of the legitimated child to his mother, several cases in our reports are in point. In the case of *Lawson* v. *Scott,* 1 Yerg., 92, it was held by this court that the county court, in a decree legitimating a child, had no power to decree the custody of the child to the legitimating father against the consent of the mother.   Judge Catron used this language: "The reputed father of an illegitimate child, who has legitimated it by virtue of the Acts of 1805, c. 2, is not, in consequence thereof, entitled to its custody.   The county court has no power to put such child in his custody or to bind it out contrary to the wishes of the mother, unless the child is a pauper."   *McCormick* v. *Cantrell,* 7 Yerg., 615.

The effect of the construction of the legitimation statute contended for by complainant's counsel not only compels the return of the putative father's estate to his brothers and sisters, but transmits to the relatives of the legitimating parent all of the legitimated son's property acquired by his own efforts, as well as that derived from his mother or from other sources.   It also prevents the legitimated bastard from inheriting from his own mother.   If this construction of the statute is cor-

rect, then a father has it in his power, by legitimating his natural offspring, to make himself and his relatives heirs of the legitimated bastard, and to defeat a statute enacted for the exclusive benefit of the mother and her children.

The rule is that such statutes conferring inheritable blood upon illegimates must be strictly construed, and "are to be confined to their proper purpose, namely, the legitimation of the bastard so far as to render him capable of inheriting."

We are therefore of the opinion that the mother's right to inherit the real and personal estate of an illegitimate child is not at all affected by the legitimation of the child upon the petition of the putative father, but that as to his mother he is still an illegitimate, and her right to inherit his estate is absolute.     Shannon's Code, sec. 4166.

The decrees of the chancellor and court of chancery appeals are reversed, the demurrer of Mrs. Blanch Wilson is sustained, the demurrer of the guardian *ad litem* is overruled, and the bill is dismissed.