(No. 21294.—

CARROLL C. CLARKE, Appellee, *vs.* JOHN J. CLARKE
*et al.*—(JANE WETMORE, Appellant.)

*Opinion filed October 22, 1932.*

E. P. HARNEY, for appellant.

W. H. DYER, for appellee.

GOWER, GRAY & GOWER, (EBEN B. GOWER, guardian *ad litem,*) for Mary Webster *et al.*

Mr. JUSTICE JONES delivered the opinion of the court:

Carroll C. Clarke filed a bill in the circuit court of Kankakee county for the partition of 120 acres of farm land. The bill, as afterwards amended, alleged that the complainant was the owner in fee as a tenant in common of an undivided one-fifth interest in said lands, subject to the rights of his father, John J. Clarke, as surviving husband of Emeline Clarke, deceased. John J. Clarke died prior to the entry of a decree and no notice of his rights was taken therein. The bill also alleged the interests of all other co-tenants. The complainant is a devisee of Emeline Clarke and claims title through inheritance from his grandfather, Chester Wetmore, and from certain uncles and an aunt. Jane Wetmore, the appellant, by her answer and cross-bill denied that the complainant, or anyone other than herself, has any right or title to the fee in any of the premises but alleged that she is the sole owner thereof. Her claim of ownership is

based on a group of facts and circumstances which she contends gives her sole ownership of the lands under sections 1 and 6 of the Statute of Limitations. After a hearing the chancellor entered a decree directing that partition be made of the premises according to the prayer of the amended bill. The cross-bill was dismissed for want of equity. The decree provided that in the event of a subsequent decree for sale an accounting should precede any order of distribution of the proceeds of the sale. From that decree Jane Wetmore has appealed.

Chester Wetmore, the grandfather, acquired title to 80 acres of the land by deed from the Illinois Central Railroad Company in 1865. He died intestate in 1883, leaving three sons and four daughters as his only heirs-at-law. These heirs became vested with the title to said tract as tenants in common by descent. The remaining 40-acre tract was entered by Eleazer Gray under a government patent issued in 1849. Gray and his wife, Rhoda, conveyed it in 1852 to Henry Moe, in whom the title deducible from the government appears to stop. In 1867 Rhoda Shaub (formerly Rhoda Gray) executed a written lease of this tract, with the exception of one-half acre where a dwelling house was located, to Chester Wetmore and his son Warren. The lease was for the term of the life of Rhoda Shaub, who died between 1885 and 1890. In March, 1870, Elizabeth G. Neihardt and her husband, as heirs of Isaac Gray, a brother of the aforesaid Eleazer Gray, executed and delivered a quit-claim deed for the 40-acre tract to Chester and Warren Wetmore. What title the grantor had to convey does not appear, but the record discloses that from 1867 Chester Wetmore and his son Warren were in the undisputed possession of the entire 120 acres and continued in such possession until the death of Chester in 1883. During his life he occupied a residence located on the 80-acre tract. With him lived his daughter Lovisa Ann and his sons Warren and Leonard. Another son, Samuel, had been living

in the State of New York prior to 1870, but in that year he and his family came to Illinois and took up their residence on the 40-acre tract. He aided his father and brothers in the farming operations for about two years and then returned to New York. One of the witnesses in the case testified that the Wetmores "bought Sam out" when he moved away. However, there is no written evidence of that fact nor is there anything to show that he claimed any title to the land at that time. After the death of Chester his sons Leonard and Warren continued to occupy the farm. No administration was had upon the estate of the father and nothing was done toward a distribution of his property. Warren and Leonard collected all of the issues and profits of the farm, paid all the taxes, kept up the repairs and made lasting and valuable improvements on the farm. Warren died in 1904, intestate, unmarried and without issue. No administration was had upon his estate nor has there been any division of his property among his heirs. Leonard continued in the exclusive possession of the farm after the death of Warren and until his own death, May 17, 1930. During this period of time he operated the entire farm and made valuable improvements, paid all taxes and assessments, collected all rents, issues and profits, kept insurance on buildings, fenced and tiled the land, and paid out approximately $1715 in discharge of a note and trust deed on the 80-acre tract, executed by his father. In July, 1912, he procured a quit-claim deed from his sister Eveline Exline, which purported to convey the entire farm. He died intestate, leaving the appellant, Jane Wetmore, his widow, and four adult children, as his only heirs-at-law. The children afterwards conveyed all of their interest in the land to their mother, who with certain members of her family have continued to occupy it.

The record does not show that any of the descendants or heirs of Chester Wetmore other than Warren and Leonard, except, perhaps, Eveline Exline, who conveyed to Leon-

ard in 1912, ever made any claim to possession of or title to the land prior to bringing this proceeding, but the record contains substantial evidence that during the period of Leonard's occupancy after the death of his brother Warren he laid claim to ownership of all the farm and that he was locally reputed to be its owner. However, the complainant, Clarke, testified that he had resided in Chicago for twenty-seven years; that he and his wife had visited the farm in 1912 and again in 1917; that while there in 1917 Leonard told him that some day a portion of the land would belong to him as it was a part of his grandfather's estate. The complainant said he took no steps to assert his right or title and made no demand for his share of rents or income, because he was of the belief that his uncle, who was getting old, would ultimately make provision for a just and proper settlement.

We will first consider the appellant's claim of title under section 1 of the Limitations act. The rule is that there must not only be twenty years' continuous, uninterrupted possession, but such possession must be hostile in its inception and so continue. It must be visible, exclusive and notorious, and be acquired and retained under claim of title inconsistent with that of the true owner. All of these elements must concur. (*Stowell* v. *Lynch*, 269 Ill. 437; *Andrews* v. *Floyd*, 308 id. 559.) Mere possession by one tenant in common who receives all the rents and profits and pays the taxes assessed against the property, no matter for how long a period, cannot be set up as a bar against the co-tenants. In such case the possession of one tenant in common is in contemplation of law the possession of all the tenants in common. Such possession, however, may become adverse if the tenant in common by his acts and conduct disseizes his co-tenants by repudiating their title and claiming adversely to them. (*Steele* v. *Steele*, 220 Ill. 318.) Before the possession of one tenant in common can be adverse to the co-tenant there must be a disseizin or ouster

by some outward act of ownership of an unequivocal character, overt and notorious, and of such nature as to impart information and notice to the co-tenant that an adverse possession and disseizin are intended to be asserted by the tenant in possession. (*Simpson* v. *Manson*, 345 Ill. 543.) Leonard Wetmore's possession of the farm up to the time of Warren's death was not in any way adverse, and nothing occurred thereafter from his occupancy or conduct to charge his co-tenants with notice that any change had occurred or that he intended to claim exclusive and adverse ownership of the property. He did nothing about the settlement, division or distribution of his father's or his brother's estate. He knew that his sisters or their heirs and his brother's heirs had proportionate shares or interest in the property. As late as 1912 he obtained a quit-claim deed from his sister and her husband conveying to him the 80-acre and the 40-acre tracts. No unusual motive is disclosed by the record as to why he sought a deed from her, and we can ascribe none other than a recognition of and a desire to acquire his sister's one-fifth interest. There is no reason for saying he would recognize the title of one heir and tenant in common and deny the title of another. There is nothing in the record to indicate that he disputed his sister's title and was merely trying to buy peace, nor is there anything to show that he contemplated that the deed should become color of title to the whole premises. We think the proof is insufficient to establish title under the twenty-year Statute of Limitations.

The claim of title under the seven-year Statute of Limitations must now be considered. The appellant relies upon the deed obtained by Leonard Wetmore from his sister Eveline Exline and her husband in 1912. Eveline had no greater interest in either of the two pieces of land than the heirs of any other deceased brother or sister of Leonard. When Leonard obtained a deed from her he was aware of the true state of the title, and he could not make the deed

a basis for a claim to color of title. He cannot be considered a purchaser in good faith of the entire title, and his possession under the deed cannot operate as a disseizin of his co-tenants. (*Allen* v. *Allen,* 292 Ill. 453; *Long* v. *Morrison,* 251 id. 143.) Under section 6 of the Limitations act color of title must be acquired in good faith. (*Kirby* v. *Kirby,* 236 Ill. 255.) We think the claim made under said section cannot be sustained.

The appellant contends that there can be no partition of the 40-acre tract because the complainant has not shown legal title thereto. It is not required that one must have a complete and perfect record title in order to maintain a partition proceeding. The rule is that he must have a legal title as distinguished from an equitable title. (*Kirk* v. *Kirk,* 325 Ill. 296; *Ellis* v. *Hill,* 162 id. 557.) The title of the co-tenants to the land is sufficient to predicate a suit for partition.

The appellant contends that the chancellor erred in entering a provisional decree for an accounting because no demand for rent has ever been made. In support of this contention *Cooper* v. *Martin,* 308 Ill. 224, is cited. It is there said that the co-tenant is not liable to account for the rental value of premises, or any part of it, until a demand is made by a co-tenant or co-tenants or there has been an ouster or refusal to permit joint occupation. At common law such was the rule, but it has not been the rule in this State since 1845, or perhaps an earlier date. Section 1 of chapter 2 of the Revised Statutes, entitled "An act in regard to the action of account," provides that "where one or more joint tenants, tenants in common or coparceners in real estate, or any interest therein, shall take and use the profits or benefits thereof, in greater proportion than his, her or their interest, such person or persons, his, her or their executors and administrators, shall account therefor to his or their co-tenant, jointly or severally." It was held in *Crow* v. *Mark,* 52 Ill. 332, that an action of account was

not an exclusive remedy but a bill in chancery may be maintained to compel a co-tenant to account for profits and benefits which a co-tenant has taken and used in greater proportion than his share. The statute of Illinois is similar to the statute of 4 and 5 Anne, (chap. 16,) which provided that actions of account may be brought by a tenant in common against another, as bailiff, for receiving more than comes to his share or proportion. The history of the enactments upon this subject is reviewed in *Woolley* v. *Schrader,* 116 Ill. 29, where it is said that our own act is broader than the statute of Anne, and by express terms a tenant may be required to account to his co-tenant for benefits as well as profits which he has taken or used in excess of his share. The cases of *McParland* v. *Larkin,* 155 Ill. 84, and *Dinsmoor* v. *Rowse,* 211 id. 317, approved the holding in *Woolley* v. *Schrader, supra.* It does not appear that our statute or the prior holdings of this court were brought to the attention of the court in *Cooper* v. *Martin, supra.* The right of a co-tenant to compel an accounting from another co-tenant who has received more than his share is definitely settled, and the chancellor committed no error by decreeing an accounting in this case, provided partition of the premises is not made and a sale is ordered.

It is also insisted that the decree should have directed the commissioners to assign to the appellant that portion of the premises embracing the improvements made by Leonard Wetmore. The rule is, that when improvements have been made by one tenant in common, the portion improved should, if practicable, be assigned to him in the partition of the land, and when such a division cannot be made he should be allowed reasonable remuneration from those who receive the benefits. Where the premises are sold because they are not divisible, the one making the improvements should be allowed the actual increase of the sale price consequent upon such improvements. (*Salem Nat. Bank* v. *White,* 159 Ill. 136.) The record here shows that Leonard Wetmore put

456 rods of tile on the land, fenced it, built two separate additions to the house, two additions to the barn, and constructed some out-buildings, but there is no showing made that it would be practicable, or even possible, to segregate the portion improved by him. At any rate, if it is established that the land is not divisible, the appellant will suffer no injury by the omission to provide for segregation of the improved portion, and if the commissioners attempt a division not in compliance with the rule she can object to their report and have her remedy. Until that time her rights have not been substantially prejudiced. The matter complained of is not sufficient to justify a reversal. By the amended bill the complainant "offers to do equity by the defendants in all respects," and we think the decree contemplates an accounting to that end. Such accounting must be in accordance with the law applicable to the several items to be adjusted.

The appellee's rights are not barred by the Statute of Limitations, and there is no evidence of any conduct or circumstance which would make it inequitable to permit him to assert his title, therefore the claim of *laches* is untenable. *Andrews* v. *Floyd, supra.*

From our consideration of this record we think the decree properly protects the parties interested and correctly decides the issues involved. It will therefore be affirmed.

*Decree affirmed.*