(No. 25422.—

JAMES HOWARD DUNLAVY, Appellee, *vs.* REBECCA P. LOWRIE *et al.* Appellants.

*Opinion filed December 15, 1939—Rehearing denied Feb. 13, 1940.*

EUGENE D. HARDY, for appellants.

JACK, IRWIN & SEIDENBERG, and WALTER B. SMITH, for appellee.

Mr. CHIEF JUSTICE WILSON delivered the opinion of court:

A decree entered by the circuit court of Putnam county ordered partition of a parcel of real property, a farm of 235 acres, between the plaintiff, James Howard Dunlavy, and the defendants, Rebecca P. Lowrie, individually and as

executrix and trustee under the will of George A. Lawrence, deceased, and her husband, John M. Lowrie, as executor and trustee. Defendants prosecute this appeal.

James G. Dunlavy, a resident of Putnam county, died intestate on December 29, 1873. He left surviving as his only heirs-at-law his widow, Nancy Dunlavy, their son, James H. Dunlavy, five daughters and the son of a deceased daughter. Thereafter, Nancy Dunlavy and her son acquired title as tenants in common to the undivided six-sevenths interest in the farm inherited by the daughters and the grandson. Following these conveyances, James H. Dunlavy, who had inherited an undivided one-seventh interest from his father, owned an undivided four-sevenths interest in the land subject to the dower of his mother, and she an undivided three-sevenths, together with dower in the other four-sevenths. Nancy Dunlavy died testate November 7, 1887. By her last will and testament duly admitted to record in the county court the testatrix devised her three-sevenths interest to her son for life. The second section of her will reads: "If my said son, James H. Dunlavy, shall at his death leave him surviving any child or children of his body, then it is my will that the title to said real estate shall go to and vest in such child or children in fee simple and in equal portions in case there shall be more than one such child then living." The will provided, further, that if the life tenant died leaving no child or children him surviving then the title should vest in those daughters, if any, living at the time of the son's decease. Upon the death of Nancy Dunlavy her son, James H., already the owner of an undivided four-sevenths in fee, became vested with a life estate in the remaining three-sevenths of the property formerly owned by his mother in severalty. The plaintiff, the son of James H. Dunlavy and Julia Frances Fitch, was born on August 27, 1889. Subsequently, Dunlavy obtained a decree of divorce from his wife and married the mother of his son. This family of three, James H.

and Julia Dunlavy and their son, lived together both before and after the marriage. The plaintiff was at all times acknowledged by his father to be his son and, as noted, was eventually legitimatized.

In 1898, Franklin J. Berry recovered a judgment for $4822.87, and costs, against James H. Dunlavy in the circuit court and an execution issued upon the judgment. By this time Dunlavy had acquired an additional 95 acres contiguous to the 235 acres. The sheriff levied upon Dunlavy's interest in the entire 330 acres and sold the tract to Berry for $4600. The latter, in turn, assigned his certificate of purchase to Ella P. Lawrence, mother of the defendant Rebecca P. Lowrie, for $2000. On April 23, 1900, the period of redemption having expired, the sheriff issued his deed purporting to convey the entire tract in fee to Mrs. Lawrence. By the sheriff's deed, Mrs. Lawrence became vested with an estate in fee in the undivided four-sevenths interest formerly owned by James H. Dunlavy and the life estate in the undivided three-sevenths interest devised to him by Nancy Dunlavy. Ella P. Lawrence entered into possession and since 1900 she and her successors in title, through their tenants, have continued in possession and dominion of the property. During this time Mrs. Lawrence and her heirs made improvements on the property, paid all taxes, and collected and retained the rents. In particular, from 1900 to 1934, George A. Lawrence managed the farm, had charge of the execution of all leases and collected the rents, distributing them to his wife and daughter according to their respective interests.

James H. Dunlavy, the life tenant, died on August 2, 1923, leaving the plaintiff as his only child. At this time Ella P. Lawrence was still in possession and control of the property in controversy. She died intestate March 17, 1924, leaving as her only heirs-at-law, her husband, George A. Lawrence, and their daughter, Rebecca P. Lowrie, who inherited her interest in the property. George A. Lawrence

died testate September 21, 1934. By his will Rebecca P. Lowrie succeeded to his interest.

Upon the basis of the facts narrated plaintiff, by his complaint filed July 23, 1935, alleges that since the death of his father, James H. Dunlavy, he has been the owner of an undivided three-sevenths interest in the land in question as tenant in common, first, with Ella P. Lawrence, next, with George A. Lawrence and Rebecca P. Lowrie, and thereafter, with Mrs. Lowrie, individually and in her representative capacity as executrix and trustee, and her husband, as executor and trustee, who have been successively vested with an undivided four-sevenths interest. The relief sought was partition of the farm to the extent of 235 acres and an accounting. Defendants interposed the defense, among others, that plaintiff's right, title and interest, if any, had become barred by section 6 of the Statute of Limitations. The cause was referred to a special master in chancery, who heard evidence and recommended the entry of a decree in partition in accordance with the prayer of plaintiff's complaint. Defendants' objections to the report were overruled and ordered to stand as exceptions, the chancellor overruled the exceptions material to this inquiry, and entered a decree directing partition as sought. The decree reserved the question of an accounting of the rents pending the disposition of this appeal.

Additional facts and circumstances appear from the record. At the time of James H. Dunlavy's death the property was occupied by a tenant, one Wiertz, under a written lease executed by George A. Lawrence on behalf of his wife. This tenant occupied the farm from March 1, 1922, to March 1, 1932. The next five years, the land was leased to one Patarozzi by written leases likewise executed by Lawrence. No accounting of the rents derived from these leases was ever made to plaintiff, either voluntarily, or upon demand by him.

The day of his father's funeral, plaintiff and his mother made a trip to the farm. He did not go on the property on this occasion or on a later visit in 1924, merely inspecting the farm from the road. During the year last named plaintiff made inquiry and some investigation as to his interest in the property. He admitted that on the visits mentioned he knew the land was in possession of the Lawrence family, adding, however, that he did not know what interest was claimed. Plaintiff also retained an attorney in 1924 but this attorney did not prosecute his client's claim, and made no demand of any kind upon defendants. So far as is disclosed by the evidence plaintiff did nothing further to assert his rights in the property until 1935 when he instituted this action. On the other hand, the defendants and their predecessors in title never notified plaintiff that they were holding the property adversely to him.

A certified copy of portions of the report of the inheritance tax appraiser appointed to appraise the property of Ella P. Lawrence, deceased, was introduced in evidence. Incident to valuing the land in controversy in 1924, George A. Lawrence, testified, in part: "I am now receiving nineteen hundred dollars annual rental for this land, with a satisfactory tenant. * * * Out of this nineteen hundred dollars, whenever the outstanding interest is established in any one, my understanding is that they will acquire whatever interest Nancy Dunlavy had in her life time in this property. Under her will, * * * as I understand it the lawful issue of James Dunlavy are to receive it at his death. In default of lawful issue, the sisters of James Dunlavy surviving him would receive it. Of course, when this interest is established, I will be obliged to account to the owner of that interest for whatever share he, or she, may be able to establish in this land."

To obtain a reversal of the decree, the defendants contend that plaintiff is not a devisee under the will of his

grandmother, Nancy Dunlavy, entitling him to or vesting him with any interest in the property. The laws of this State ordain that an illegitimate child shall be deemed legitimate upon the marriage of the mother and the reputed father. (Ill. Rev. Stat. 1939, chap. 17, par. 15, p. 256.) Plaintiff, having been born subsequent to the execution of the will of and the death of Nancy Dunlavy, acquired no interest in the land devised by her upon his birth and could acquire none thereafter unless he survived his father, the life tenant. This he did, and when the life estate terminated there was a child of the body of James H. Dunlavy to take the contingent remainder created by the will of Nancy Dunlavy. The child was admittedly legitimate when the prior estate expired and it is immaterial that he was born illegitimate. We find nothing in the language of the will of Nancy Dunlavy warranting an interpretation of the words "child or children of his body" which would exclude plaintiff. The defendants, however, place reliance upon the familiar principle that a devise to a child must be held to mean a legitimate child unless there is an express designation of illegitimate children, or a necessary implication of an intention that illegitimate be treated as legitimate issue. (*Marsh* v. *Field,* 297 Ill. 251.) Plaintiff met the requirements of the rule invoked when the antecedent life estate ended. The parents of the illegitimate child in the *Field case* were never married and no claim as to his legitimacy was advanced. *Marsh* v. *Field, supra,* is simply not in point. In *Smith* v. *Garber,* 286 Ill. 67, a devise of a remainder to the "child or children" of a named niece of the testatrix was held sufficiently comprehensive to include an illegitimate child of the niece who had been born prior to the execution of the will. Manifestly, if the devise in *Smith* v. *Garber, supra,* went to the natural child of the niece who, so far as the opinion discloses, was never legitimatized, the devise to the child or children of the body of James H. Dunlavy was broad enough to include plaintiff

who answered the description of devisee of the contingent remainder devised by his grandmother.

The principal issue which requires consideration is the determination of whether section 6 of the Limitations act is a bar to plaintiff's action and, conversely, whether defendants have acquired, as they maintain, an indefeasible title under the statute. Section 6, (Ill. Rev. Stat. 1939, chap. 83, par. 6, p. 1994,) so far as relevant, declares: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

In order to defeat plaintiff's title and establish a bar under section 6 it was incumbent upon the defendants to prove color of title obtained in good faith, payment of taxes for seven successive years, and continuous, uninterrupted hostile possession for the statutory period adverse to the plaintiff. (*Town of Kaneville* v. *Meredith,* 361 Ill. 556; *Blair* v. *Johnson,* 215 id. 552.) Although the sheriff's deed to Ella P. Lawrence in 1900 conveyed only such title, interest and estate in the property in controversy as James H. Dunlavy then owned, namely, an undivided four-sevenths interest in fee and a life estate in the other three-sevenths, (Ill. Rev. Stat. 1939, chap. 77, par. 35, p. 1923; *Huber* v. *Hess,* 191 Ill. 305;) the deed constituted color of title except as against the plaintiff, James Howard Dunlavy. (*Thomas* v. *Eckard,* 88 Ill. 593; *Dick-*

*enson* v. *Breeden,* 30 id. 279.) Good faith is present where there is no fraud and the color of title is not acquired in bad faith. The statute does not require ignorance of adverse claims or defects in the title, and notice, actual or constructive, is immaterial. (*Simpson* v. *Manson,* 345 Ill. 543; *Coward* v. *Coward,* 148 id. 268.) Conceding that color of title under section 6 was obtained in good faith and that defendants have paid taxes for seven years, there remains the decisive question as to whether they have satisfied the third prerequisite to establishing a bar under the statute, namely, that their possession has been adverse to plaintiff. From 1900 to August 2, 1923, the date of James· H. Dunlavy's death, Ella P. Lawrence had the right of possession to the entire tract and the privilege of appropriating to her own use the rents and profits therefrom. Plaintiff's contingent remainder did not vest until his father's death. The Statute of Limitations, it is settled, does not begin to run against a remainderman or reversioner until the intervening estate is extinguished and a right of entry accrues to him. (*Gibbs* v. *Gerdes,* 291 Ill. 490; *Cassem* v. *Prindle,* 258 id. 11; *Schroeder* v. *Bozarth,* 224 id. 310; *Blair* v. *Johnson, supra.*) Defendants' possession could not have been adverse to plaintiff prior to August 2, 1923, and the statute, it follows, could not run against him before the day named. The possession of Ella P. Lawrence·continued to be rightful, however, as she was then a tenant in common with plaintiff, the owner of three-sevenths of the property in fee; by virtue of her unquestioned ownership of an undivided four-sevenths interest. The issue is thus narrowed to determining whether the rightful possession of the defendants has become adverse to plaintiff between August 2, 1923, and July 23, 1935, the day he filed his complaint.

Mere possession by one tenant in common who receives the rents and pays the taxes assessed against the property, irrespective of how long continued, is not, of itself, sufficient

to overcome the presumption of law that the possession of the one is the possession of all the others. (*Clarke* v. *Clarke,* 349 Ill. 642; *Roberts* v. *Cox,* 259 id. 232; *Long* v. *Morrison,* 251 id. 143; *Carpenter* v. *Fletcher,* 239 id. 440; *McMahill* v. *Torrence,* 163 id. 277; *Sontag* v. *Bigelow,* 142 id. 143.) Such possession may, it is true, become adverse if the tenant in common by his acts and conduct disseizes his co-tenants by repudiating their title and claiming adversely to them. (*Clarke* v. *Clarke, supra; Tillotson* v. *Foster,* 310 Ill. 52; *Roberts* v. *Cox, supra; Waterman* .*Hall* v. *Waterman,* 220 Ill. 569; *Steele* v. *Steele,* 220 id. 318.) To establish adverse possession against a tenant in common the evidence must be stronger, however, than is necessary to prove ordinary adverse possession by strangers. (*Tillotson* v. *Foster, supra; Stowell* v. *Lynch,* 269 Ill. 437.) Before the possession of one tenant in common can be adverse to his co-tenant there must be a disseizin or ouster by outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such nature to impart information and apprise the co-tenant that an adverse possession and an actual disseizin are intended to be asserted by the tenant in possession. (*Clarke* v. *Clarke, supra; Simpson* v. *Manson, supra; Andrews* v. *Floyd,* 308 Ill. 559; *Peabody* v. *Burri,* 255 id. 592; *Long* v. *Morrison, supra; Sontag* v. *Bigelow, supra; McMahill* v. *Torrence, supra.*) Manifestly, the possession of the defendants and their predecessors in title has not been adverse to their co-tenant, the plaintiff, in the absence of a disseizin. Unless defendants' possession, originally amicable as to their co-tenant, the plaintiff, has subsequently become and remained hostile, section 6 of the Limitations act cannot avail them.

August 2, 1923, Ella P. Lawrence and the plaintiff each owned undivided interests in the property in controversy. The facts previously recounted disclose that defendants, the co-tenants in possession, at no time since August 2,

1923, gave notice to plaintiff, the co-tenant out of possession, that their possession was adverse to him. Defendants argue, nevertheless, that where the party out of possession has actual knowledge that the person in possession holds adversely, proof of notice becomes unnecessary. Despite defendants' repeated assertions to the contrary, proof of actual knowledge by plaintiff of any disavowal of this interest, is wanting. Plaintiff admitted knowledge of defendants' possession but he denied actual knowledge that they were claiming to hold adversely to him. Mere knowledge of the obvious fact of possession cannot be converted into proof of knowledge that those in possession were claiming adversely. Defendants' argument rests upon a false premise and must fall. For ten years commencing March 1, 1922, the tenant Wiertz occupied and farmed the land under leases from Ella P. Lawrence and her successors in interest, and since March 1, 1932, other tenants have been in possession under written leases. Assuredly, Mrs. Lawrence enjoyed the right to make the lease with Wiertz in 1922 and he was occupying the property as her tenant in 1923 when plaintiff's interest in the property was ascertained. The record is silent with respect to any affirmative act on the part of Ella P. Lawrence, her husband or her daughter even purporting to apprise plaintiff that any one of them was claiming title and right of possession in the whole property after the death of James H. Dunlavy. On the contrary, George A. Lawrence not only had knowledge of the outstanding interest of plaintiff but admitted the validity of his claim shortly after the death of his wife, Ella P. Lawrence. In 1924, a year after the death of James H. Dunlavy, the defendants were not claiming sole ownership of the entire tract by reason of the execution of leases, or otherwise. Since no positive action was thereafter taken by defendants to notify plaintiff that they were claiming to own the entire property it follows, necessarily,

that the defendants have not established a disseizin since the death of James H. Dunlavy.

Defendants' claim that the chancellor erred in admitting improper evidence offered by plaintiff over their objection does not require consideration. The objections to the master's report which stood as exceptions before the chancellor disclose that an objection was taken to the conclusions of the master from the testimony but not to the admission of the evidence itself. It is necessary to object to the ruling of the master and obtain the court's ruling on the master's action in order to take advantage of alleged errors in the admission of evidence. (*Seely* v. *Rowe,* 370 Ill. 336; *Northern Trust Co.* v. *Sanford,* 308 id. 381.) If, as here, the point is not brought to the chancellor's attention it can not be reviewed.

The decree of the circuit court is affirmed.

*Decree affirmed.*