**Robert Lee SCALES, Plaintiff-Appellee,**

v.

**Preston SCALES et al.,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Aug. 26, 1977.

Certiorari Denied by Supreme Court
Jan. 16, 1978.

Stanley L. Holtman, Berry & Berry, Franklin, Joseph S. Daniel, Murfreesboro, for defendants-appellants.

D. Dewees Berry, IV, McWilliams, Berry & Oglesby, Franklin, for plaintiff-appellee.

DROWOTA, Judge.

## OPINION

This suit to remove a cloud from the title to real property raises questions concerning the interest taken by an illegitimate child, legitimated by judicial proceedings, under a devise by his grandfather to his father for life, remainder to his father's "children."

Plaintiff Robert Lee Scales was born out of wedlock to William James Scales on September 9, 1922. He was the only child of William Scales, who filed a petition resulting in an order declaring plaintiff "the legitimate child of the Petitioner" on November 30, 1962. The version of T.C.A. § 36–306 under which plaintiff was legitimated read as follows:

> The effect of the legitimation is to create the relation of parent and child between the petitioner and person legitimated, as if the latter had been born to the former in lawful wedlock.

This differs from the present statute, which was enacted in 1965 and provides in part:

> When . . . the relationship of parent and child is established between the petitioner and the child named in the petition and an order of legitimation has been entered, the child shall be a legitimate child of the petitioner for the purpose of inheriting from him as if born to him in lawful wedlock.

In 1946 Abb Scales, father of William James Scales and grandfather of plaintiff, executed a will in which he directed his trustees to convey to each of his six children, including "Willie James," one-sixth of his real property "for and during their lives with remainder to their children." Abb Scales died in 1950, and in 1951 the executors and trustees of his estate duly executed to William James Scales a deed to certain realty "for life with the remainder to his children." William James Scales died in 1972, and plaintiff claims title to the property pursuant to the remainder interest created under Abb Scales's will. Plaintiff brought the instant suit in Williamson County Chancery Court to remove what he alleges is a cloud upon his title caused by the various defendants who as lineal descendants of Abb Scales would take any property as to which he died intestate and who claim to be the owners of the property in question here as tenants in common.

Defendants' claims are twofold. First, they contend that plaintiff, as illegitimate son of William Scales, cannot take the remainder to William's "children" under the will of Abb Scales, even though he was made legitimate by court decree after Abb Scales's death. Since plaintiff cannot take, and since William Scales had no other children who could take, defendants argue, Abb Scales died intestate with respect to the remainder interest in this piece of property and defendants now own it as tenants in common because they are the heirs of Abb Scales. Further, defendants contend that the issue of plaintiff's interest in this property has already been decided in an earlier suit and is res judicata.

The earlier case referred to by defendants, *Scales v. Dye*, was a suit filed by William James Scales, at that time the life tenant of the property in issue here, in which he set forth his inability to develop the land for the uses to which it was most suited and asked that the court decree that it be sold and the proceeds reinvested to continue the life interest and remainder in some other property. The complaint alleged that William Scales had no children, and asked appointment of a guardian ad litem to represent unborn remaindermen. It appears, however, that plaintiff Robert Scales was added to that suit by supplemental bill as a defendant, and that that bill was later dismissed and plaintiff removed as a defendant. Evidently plaintiff was then added as a complaintant in the suit by another supplemental bill. It was during these proceedings, in November of 1962, that plaintiff was legitimated.

At this point, there is a gap in the history of the earlier lawsuit as presented in the record before us. Defendants in their pleadings quote briefly from an opinion they attribute to Chancellor Smith in Williamson County dated January 5, 1963. The quotes contain language to the effect that the word "children" in Abb Scales's will does not include those children who, like plaintiff, were born illegitimate and later legitimated. Reference is also made by some of the defendants to an order entered pursuant to this opinion. Neither the opinion nor the order appears in the record, nor is it possible to divine in what context either was made. It is also unclear what the status of the suit was for the next seven years. In September of 1970, a decree was finally entered by Special Chancellor Short, who ordered that the property be sold and the proceeds reinvested. An appeal was taken to this Court, where the decree was affirmed. In our opinion, written by Judge Todd, we specifically refrained from deciding whether or not plaintiff Robert Scales had an interest in the property, and emphasized that resolution of that question was immaterial to the issue presented because plaintiff had not opposed the sale nor had he appealed. From this Court the case was taken to the Supreme Court, which issued a per curiam order remanding the case to Chancery Court so that the will of Abb Scales and a decree of the court construing that will might be made a part of the record. While the case was still in Chancery Court for this purpose, William James Scales died, and the parties agreed to a dismissal of the case, which was ordered on March 29, 1973.

In the instant case, after the various defendants had filed their answers, plaintiff moved for summary judgment. In support of his motion plaintiff argued briefly that he was entitled to the remainder as a child of William James Scales and that res judicata was not a good defense, and he submitted copies of his father's complaint in *Scales v. Dye*, of the opinion of this Court on appeal of that case, of the Supreme Court's per curiam order, and of the Chancery Court's order of dismissal. Defendants submitted nothing further in opposition to the motion. The Chancellor's order, filed August 13, 1976, granted plaintiff's motion for summary judgment. The Chancellor declared that plaintiff was not barred by res judicata or collateral estoppel from litigating the issue of his right to the remainder under the will of Abb Scales, and further held that plaintiff did have that right and that title to the property is vested in him. From this order defendants have appealed.

The arguments on appeal here follow the same lines as those below. Defendants first contend that plaintiff's suit is barred by the principles of res judicata or collateral estoppel. The distinction between these two theories is that °

> res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues which were or could have been litigated in the former suit, while collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

*Harrison v. Bloomfield Building Industries, Inc.*, 435 F.2d 1192 (6th Cir. 1970) (applying Tennessee law). To support a plea of res judicata, it must be shown that the judgment in the prior case was "final" and concluded the rights of the party against whom it is asserted. *Thompson v. Thompson*, 54 S.W. 145 (Tenn.Ch.App.1899); see *Staggs v. Vaughn*, 205 Tenn. 9, 325 S.W.2d 277 (1959). It is also necessary to show that both cases involve the same cause of action. *A. L. Kornman Co. v. Metropolitan Government of Nashville*, 216 Tenn. 205, 391 S.W.2d 633 (1965); *New York Life Insurance Co. v. Nashville Trust Co.*, 200 Tenn. 513, 292 S.W.2d 749 (1956). To sustain a plea of collateral estoppel it must be shown, *inter alia*, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit. *Shelley v. Gipson*, 218 Tenn. 1, 400 S.W.2d 709 (1966).

On the record before us, we are unable to conclude that any of the above conditions have been satisfied. We do not have before us copies of either the opinion or the order alleged to conclude plaintiff's rights, nor do we know anything of the context in which they were issued. Thus, we cannot hold any decision in either of these documents "final," even wholly accepting their existence as described in the pleadings. *Scales v. Dye* itself was ultimately dismissed without a final determination ever having been reached. Moreover, from what we know of *Scales v. Dye*, it did not involve the same cause of action as the instant case. In *Scales v. Dye*, the life tenant sought a decree ordering the sale of the property, and joined as defendants those who might have a claim to the remainder interest. In this case plaintiff, claiming the remainder interest, sues other defendants with claims to it to determine who has title to that interest. The two cases thus present totally different issues, were brought for different purposes, and align the parties differently. As for collateral estoppel, it is made clear in this Court's opinion in *Scales v. Dye* on appeal, if it was not obvious in any case, that the question of plaintiff's interest in the property was not an issue necessary to the decision in *Scales v. Dye*. Plaintiff never objected to the sale of the property proposed by his father in *Scales v. Dye* and, since the Chancery Court and this Court found that any unborn remaindermen who might claim an interest were adequately represented even if plaintiff had no interest in the property, the question of his interest did not have to be answered to resolve that litigation. While there may be still other reasons for refusing to apply res judicata or collateral estoppel in this case, for example, plaintiff's argument that his right to the property is purely a legal question and not subject to the latter doctrine, we consider the reasons outlined above sufficient to show the inapplicability of both theories. On the record before us, we cannot hold that the Chancellor erred in refusing to uphold defendants' pleas of res judicata or collateral estoppel, and this assignment of error must be overruled.

The second and final argument of defendants contests the trial court's conclusion that plaintiff, originally illegitimate but later legitimated by his father in a judicial proceeding, was entitled to property devised by his grandfather to his father for life, with remainder to his father's "children." It is clear that in construing the meaning of words in a will, the testator's intent is the controlling fact to be ascertained. *Harris v. Bittikofer*, 541 S.W.2d 372 (Tenn.1976); *Martin v. Taylor*, 521

S.W.2d 581 (Tenn.1975). The issue in this case, however, arises on a motion for summary judgment and as a matter of law, with the words used in the will as the only evidence of intent. The general rule, with exceptions not relevant here, is that, absent clear evidence of contrary intention, words such as "children" in a will will be construed to mean legitimate children and not to include illegitimate ones. Annot., 34 A.L.R.2d 4, § 5 (1954), and cases there cited. Tennessee has adhered to this rule in at least two cases. *Jennings v. Jennings*, 165 Tenn. 295, 54 S.W.2d 961 (1932); *Ferguson v. Mason*, 34 Tenn. 618 (1855). Although this rule might be questioned as a matter of policy today, it is still followed by a majority of jurisdictions, and we accept it and apply it in this case. Accordingly, Abb Scales must be held to have meant only legitimate children when he devised the remainder interest in the property in question to the "children" of his son, William James Scales.

The next question, obviously, is whether or not plaintiff's legitimation by his father in a judicial proceeding subsequent to the death of Abb Scales rendered him "legitimate" within the meaning of that word under the legal construction which declares that the word "children" in the will means "legitimate children." A few jurisdictions have held in similar situations that the child is legitimate for this purpose and entitled to take under the will. *Dunlavy v. Lowrie*, 372 Ill. 622, 25 N.E.2d 67 (1939); *Clinton County National Bank & Trust Co. v. Todhunter*, 43 Ohio App. 289, 183 N.E. 88 (1931); Annot., 34 A.L.R.2d 4, § 12, at 70–75 (1954), and cases cited therein. These cases generally involve legitimation by subsequent marriage of the parents, but we do not find this a material distinction from the instant case because both situations involve the legitimation of an otherwise illegitimate child pursuant to statutory authority. In one case involving legitimation by judicial proceeding, it was held that the legitimated child could not take as a "child" under his great-grandfather's will. *Hicks v. Smith*, 94 Ga. 809, 22 S.E. 153 (1895). The legitimation statute in

*Hicks*, like the current version of T.C.A. § 36–306, limited the effects of the procedure to allowing the child to inherit from his father, and the court intimated that had a broader definition of "legitimate" been in effect the child might have been brought within the legal meaning of the terms of the will. The version of T.C.A. § 36–306 in effect when plaintiff Robert Scales was legitimated in 1962, quoted above, does not limit the effect of the legitimation in any such way. Although granting the child the ability to inherit from the father is probably the primary aim of any legitimation proceeding, it is certainly not the only conceivable one, and we do not find in any of the few cases applying the pre-1965 versions of T.C.A. § 36–306 a requirement that it be so limited. See *Baker v. Miller*, 137 Tenn. 55, 191 S.W. 527 (1917); *Scott v. Wilson*, 110 Tenn. 175, 75 S.W. 1091 (1903); *Murphy v. Portrum*, 95 Tenn. 605, 32 S.W. 633 (1895); *McKamie v. Baskerville*, 86 Tenn. 459, 7 S.W. 194 (1888). The concern of the statute is the legal relationship of father and son, which is also our concern in this case. Of course, it could also be argued that even the "limited" version of legitimation now in effect under § 36–306 is enough to make a child legitimate for purposes of the rule construing "children" in a will to mean legitimate ones, but we need not go so far. We hold that plaintiff's legitimation as the child of William James Scales under the 1962 version of T.C.A. § 36–306 rendered him legitimate and so within the definition of William Scales's "children," to whom the remainder interest in the property in question was granted under Abb Scales's will. Title to the property is in plaintiff, and the trial court was correct in so holding.

For clarity's sake, we will summarize our reasoning on this issue. The controlling factor of testator's intent in the use of the word "children" is governed, in the absence of contrary evidence, by the rule construing this as meaning legitimate children only. At testator's death, plaintiff was illegitimate and William James Scales had no other children, so that no one as yet had an

interest in the remainder to children of William. Under familiar class gift rules, the remainder would vest in any legitimate child of William's who came into existence before William's death, subject to open and let in other members of the class coming into existence before his death, at which time the rule of convenience would close the class and finally determine its membership. See L. Simes, Future Interests §§ 11, 102 (2d ed. 1966). Our determination that plaintiff's legitimation made him a legitimate child as implied in the word "children" in the will means that he came into existence in 1962 as a legitimate child of William James Scales just as though he had been then lawfully born to him. Since this occurred during the life of William, the life tenant, the remainder vested in plaintiff subject to open, and since William died without having had any other children, the class closed at that point in 1972 with plaintiff as its only member. Plaintiff thus has exclusive title to the property under the will of Abb Scales.

Several other factors, while not controlling, strengthen the result reached here. Plaintiff Robert Scales was the only child William Scales ever had, and plaintiff had been born when Abb Scales wrote his will. Further, the broader version of T.C.A. § 36–306 under which plaintiff was legitimated was also in effect in 1946 when Abb Scales wrote his will, so that he must be presumed to have had knowledge of the possibility of legitimation. These facts, and the fact that in spite of them Abb Scales wrote "children" instead of, for example, "children *born in* lawful wedlock," afford some indication that he did not intend to exclude plaintiff. We do not think that plaintiff's having been legitimated after Abb Scales's death rather than before it is inconsistent with our reasoning and result, for the important point is that plaintiff was "legitimate" and within the testator's intent in using the word "children" at a time when the remainder could still vest in the children of William Scales. Other cases, such as *Dunlavy v. Lowrie, supra,* have applied reasoning similar to that which we employ here when the legitimation took place after the death of the testator.

Finally, defendants rely on *Union Planters National Bank v. Corbitt,* 63 Tenn.App. 430, 474 S.W.2d 139 (1971). That case also involved a testamentary gift of a life estate with remainder in the life tenant's "issue." But there, the life tenant had *adopted* children after testator's death, and the court held that in the absence of contrary intent the adopted children were not included. This rule of construction excluding adopted children is separate and distinct from the one excluding illegitimate children, and the court in *Union Planters* stated that the basis of the former is the assumption that words like "issue" and "children" are intended to refer to *blood* relationships. Of course, in the case of illegitimate children, a blood relationship does exist. Further, our decision here rests on plaintiff's *being* legitimate and *not* violating the construction against including illegitimates within the definition of "children." Thus *Union Planters* in no way contradicts or affects the result in this case.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.