TENNESSEE CONSOLIDATED COAL COMPANY, Petitioner,

v.

Donna FLOYD, o/b/o Arnold Dustin Davis, Surviving Child of Clarence Davis (Deceased), and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 01–3142.

United States Court of Appeals, Sixth Circuit.

July 16, 2002.

Before MOORE and SILER, Circuit Judges; and STAFFORD,* District Judge.

ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

STAFFORD, District Judge.

The petitioner in this case seeks review of a decision of the Benefits Review Board, United States Department of Labor, affirming an award of black lung benefits to Arnold Dustin Davis under the Federal Coal Mine Health and Safety Act of 1969, as amended (hereinafter referred to as the "Black Lung Benefits Act"). 30 U.S .C. §§ 901–945. We have jurisdiction under 30 U.S.C. § 932(a) (incorporating into the Black Lung Benefits Act the appeal provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 921(c)). We AFFIRM.

## I.

Donna Floyd ("Floyd") gave birth to her third child, Arnold Dustin Davis ("Dustin"), on February 14, 1989. Floyd was not married at the time, and no father was listed on the boy's original birth certificate.[1] According to Floyd, Dustin was conceived approximately two to three months after she separated from Tommy Walters ("Walters"), the man with whom she had been living since sometime in 1985. During the months that she was not living with Walters, Floyd occasionally slept with Clarence Davis ("Davis").

Floyd reunited with Walters some months after Dustin was conceived. At the time, both Walters and Davis knew that Floyd was pregnant, and both assumed that Davis was the father. Floyd married Walters on November 11, 1989, nine months after Dustin was born.

Davis worked as a coal miner from 1968 until 1987. The petitioner, Tennessee Consolidated Coal Company ("Tennessee Consolidated"), was Davis's employer for most of those years. As a result of his employment in the nation's coal mines, Davis contracted a severe chronic respiratory disease that was diagnosed as coal workers' pneumoconiosis. The disease ultimately caused Davis to become totally disabled within the meaning of the Black Lung Benefits Act, making him eligible to receive black lung benefits effective in January of 1991, payable by Tennessee Consolidated. Davis was paid augmented benefits on behalf of three minor children—not including Dustin—from January, 1991, until July, 1993; and he was paid augmented benefits on behalf of two minor children—again not including Dustin—from August, 1993, until August, 1996.

Sometime in 1992, perhaps 1993, after Walters and Floyd again separated, Floyd was jailed for forgery. Three of her children, including Dustin, were placed in foster care during her incarceration. While

---

* The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

1. The name given to Dustin at his birth was Arnold Dustin Johnson. Johnson was Floyd's maiden name. A judge later ordered that Dustin's last name be changed to Davis and that his birth certificate be changed to list Davis as his father.

Floyd was in prison, Davis sought to legitimate Dustin as his son and to gain custody of him. His efforts—in which Floyd joined—resulted in a legitimation order entered on August 26, 1994, by the Juvenile Court of Bledsoe County, providing that Davis was Dustin's biological father and that Dustin was Davis's legitimate son. Dustin thereafter lived with Davis until Davis's death on September 23, 1996. Despite the legitimation order, Davis never sought to have his black lung benefits augmented on behalf of Dustin.

On November 12, 1996, Charles Davis ("Charles"), a surviving minor son of Clarence and Kathy Bell Davis, filed a claim for survivor's benefits under the Black Lung Benefits Act. As directed, Charles listed on his claim form the names of Davis's survivors, albeit his list did not include Dustin's name. On October 29, 1997, Tennessee Consolidated agreed to pay benefits to Charles, effective upon Davis's death on September 23, 1996.

On October 23, 1997, the district director of the Office of Workers' Compensation Programs ("OWCP") received a letter from Floyd stating that Dustin was fathered by Davis and that Dustin should be added "to his father's claim." J.A. at 54. On December 31, 1997, the district director issued a show cause order granting all parties thirty days to admit evidence why black lung benefits should not be awarded to Arnold Dustin Davis. In that order, the district director stated he was "of the opinion that the documentation provided by the claimant constitutes sufficient evidence of the eligibility of Arnold Dustin Davis for black lung benefits on the record of Clarence Davis." J.A. at 51. When Tennessee Consolidated failed to respond to the show cause order, the district

director entered a proposed decision and order stating: "[B]y choosing not to respond to the order to show cause issued on December 31, 1997, the responsible operator, Tennessee Consolidated Coal Company, has tacitly accepted liability for the payment of benefits in this claim, and this proposed decision and order will constitute an award of benefits." J.A. at 45.

Tennessee Consolidated thereafter requested a hearing before the Office of Administrative Law Judges. The administrative law judge ("ALJ") to whom the case was referred found that Donna Floyd's informal request for benefits could not be accepted as a claim, and because no formal claim had ever been filed on behalf of Arnold Dustin Davis, he had no jurisdiction over the boy's request for benefits. The case was remanded to the district director with instructions to provide Arnold Dustin Davis with the opportunity to file a prescribed claim form.

Floyd filed a formal claim on behalf of Dustin on September 3, 1998, and the case was returned to the Office of Administrative Law Judges for hearing. Before a hearing was held, Tennessee Consolidated moved to compel Dustin to submit to DNA testing in order to determine his paternity. The ALJ denied Tennessee Consolidated's motion by order dated February 1, 1999.

A hearing was held before the ALJ on February 25, 1999, and a decision and order granting benefits was entered on July 22, 1999. The ALJ found that Dustin qualified as the surviving child of Clarence Davis pursuant to 20 C.F.R. § 725.208(a) and (d).[2] Specifically, the ALJ found that the Juvenile Court of Bledsoe County had earlier granted the joint petition for legitimation filed by Davis and Floyd, had de-

---

**2.** The ALJ also relied on section 725.208(f)(1). The Board, however, correctly determined that such reliance was misplaced.

creed that Davis was the father of Dustin, and had granted Davis custody of the boy. The ALJ rejected Tennessee Consolidated's argument that the order of legitimation was procured by fraud because—she said—Tennessee Consolidated had not pleaded fraud with particularity, rendering its contention regarding fraud to be no more than "mere speculation and supposition." App. at 28. The ALJ also made clear that she found no reason "to doubt the genuineness of the actions of the decedent, Clarence Davis, or the very frank, and credible testimony of Claimant's mother, Donna Floyd ." App. at 29. Alternatively, the ALJ held that Tennessee Consolidated could not collaterally attack the state court order.

On Tennessee Consolidated's appeal of the ALJ's order, the Benefits Review Board ("Board") both affirmed the ALJ's finding that Dustin was Davis's "surviving dependent" for purposes of the Black Lung Benefits Act and also affirmed the ALJ's denial of Tennessee Consolidated's request for DNA blood-testing. The Board rejected the ALJ's finding that Tennessee Consolidated could not—as a matter of law—collaterally attack the state court order.[3] The Board nonetheless found substantial evidence to support the ALJ's finding that Tennessee Consolidated failed to proffer, much less establish, any basis upon which to collaterally attack the order of legitimation. On February 14, 2001, Tennessee Consolidated filed a timely notice of appeal to this court.

## II.

The court of appeals must affirm the Board's decision if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's

determinations. *Glen Coal Co. v. Seals,* 147 F.3d 502, 510 (6th Cir.1998). Like the Board, this court reviews the ALJ's determinations only to decide whether they are supported by substantial evidence and are in accordance with the applicable law. This court does not reweigh the evidence or substitute its judgment for that of the ALJ.

## III.

The Black Lung Benefits Act provides benefits to the "surviving dependents" of miners who die due to pneumoconiosis. 30 U.S.C. § 901(a). To qualify as a "surviving dependent," a claimant must be "a child or a step-child [of the deceased miner] who is ... unmarried; and ... under eighteen years of age." 30 U.S.C. §§ 902(a)(1) and (g). Under the applicable federal regulations, a claimant qualifies as a "child" of a deceased miner if (1) "[t]he courts of the State in which the beneficiary is domiciled [at the time of death] ... would find, under the law they would apply, that the [claimant] is the beneficiary's child"; or (2) the claimant "would, under State law, have the same right as a child to share in the beneficiary's intestate personal property." 20 C.F.R. §§ 725.208(a) and (d).

While the parties in this case dispute whether Dustin should be considered Davis's "child" for purposes of the Black Lung Benefits Act, they agree that Dustin is unmarried and under the age of eighteen. They also agree that Tennessee law governs the dispute because Davis was domiciled in the State of Tennessee at the time of his death.

Before 1997, Tennessee's legitimation statute, T.C.A. § 36–2–201 (repealed 1997),

---

**3.** We do not decide whether the Board was correct in rejecting the ALJ's finding that Tennessee Consolidated could not collaterally attack the state court order because that issue is not before us on appeal.

provided men with a vehicle for obtaining judicial recognition of their parental rights as a child's biological father. Similarly, before 1997, Tennessee's paternity statute, T.C.A. § 36–2–101 (repealed 1997), provided women with a vehicle to obtain a judicial declaration regarding the identity of their child's father. Unlike the paternity statute, the purpose of which was to require the biological father to support the child, "the purpose of the legitimation statute [wa]s to legitimate a child not already recognized as such by the law." *Bass v. Norman,* C.A. No. 164, 1989 WL 157884, at *3 (Tenn.Ct.App. Dec.29, 1989).[4]

Until 1996, legitimation proceedings could not be filed without the mother's consent. Because they were essentially uncontested, legitimation proceedings were less formal than paternity proceedings. *White v. Armstrong,* No. 01A01–9712–JV–00735, 1999 WL 33085, at *2 (Tenn. Ct. App. Jan 27, 1999). Despite the informality of the proceedings and absent any improprieties or errors in those proceedings, a legitimation decree was recognized by the Tennessee courts as a valid adjudication of a child's legitimacy. Indeed, the Supreme Court of Tennessee long ago explained that "the plain purport of the [legitimation] decree, authorized by the act of 1805, was to render an illegitimate child a legitimate, and to place him upon the same footing as if born in lawful wedlock. He was thereby placed with the state and condition of a legitimate, and becomes the lawful child and prospective heir of the natural father." *McKamie v. Baskerville,* 86 Tenn. 459, 7 S.W. 194 (Tenn.1888); *see also Helms v. Elliott,* 89 Tenn. 446, 14 S.W. 930, 931 (Tenn.1890) (recognizing that "[t]he event of legitimation makes the legitimated person, to all intents and purposes, the lawful child of the legitimating

parents"). More recently, the Supreme Court of Tennessee has held, pursuant to section 31–2–105(a)(2)(B) of the state code, that "if there has been an adjudication of paternity prior to the death of the father, the child born out of wedlock inherits by intestate succession as a legitimate child, and title to the decedent's real property vests in that child immediately upon death of the decedent. No further adjudication is necessary to establish the child's right to inherit." *Bilbrey v. Smithers,* 937 S.W.2d 803, 807 (Tenn.1996).

In 1994, when Dustin was legitimated, the Tennessee legitimation statute provided that "[w]hen ... the relationship of parent and child is established between the petitioner and the child named in the petition and an order of legitimation has been entered ... the child shall be a legitimate child of the petitioner for the purpose of inheriting from the petitioner as if born to the petitioner in lawful wedlock." T.C.A. § 36–2–206 (1994). For purposes of intestate succession specifically, the applicable Tennessee statute provided that a person born out of wedlock is considered a child of the father if "[t]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof." T.C.A. § 31–2–105 (1994).

The Tennessee Supreme Court has said that clear and convincing evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Fruge v. Doe,* 952 S.W.2d 408, 412 n. 2 (Tenn.1997). Parentage may be proved using several different types of evidence. In addition to direct evidence of paternity through blood tests, the courts may consider (1) the declarations and conduct of the child's biological mother; (2) acknowledgment by the

---

4. The legitimation and paternity statutes were repealed in 1997 and replaced with a single cause of action for establishing the parentage of a child.

father; (3) family resemblance; and (4) evidence concerning access, opportunity, and capacity to have children. *McDowell v. Boyd*, No. 01A01–9509–CH–00413, 1997 WL 749470, at *3 (Tenn.Ct.App. Dec.5, 1997).

In *McDowell*, the evidence revealed that (1) the putative father, David Boyd ("Boyd"), was involved in a sexual relationship with the mother before the child's birth; (2) the mother repeatedly told her son and others that Boyd was her son's father; (3) Boyd acknowledged his son by embracing him and giving him a gift upon the son's graduation from high school; (4) Boyd acknowledged to friends that the boy was his son, although he also told his wife and other family members that the boy was not his son; and (5) the boy and Boyd had common facial characteristics and mannerisms. The Tennessee court determined that such evidence constituted clear and convincing proof of Boyd's paternity.

In *Majors v. Smith*, 776 S.W.2d 538 (Tenn.Ct.App.1989), an appellate court found clear and convincing evidence of J.D. Smith's paternity where (1) the mother testified that her daughter was Smith's child born out-of-wedlock; (2) the mother testified that Smith paid medical bills and regularly gave her money for the support of the child; (3) a number of witnesses testified that Smith had acknowledged to them that he was the child's father; and (4) the child testified that she and the deceased had a close personal relationship, that he supported her, took her to visit relatives and attended basketball games where she played. Neither the trial court nor the appellate court was persuaded that the testimony of several defense witnesses—to the effect that the decedent had either told them that he had no children or had never mentioned to them that he had a child—was insufficient to cast doubt on the mother's/daughter's evidence to the contrary.

## IV.

Applying Tennessee law, the ALJ in this case determined that Dustin was the child of Davis not only because the Bledsoe County Juvenile Court's legitimation order constituted "clear and unequivocal proof that the State of Tennessee, under the laws that it would apply, has determined that Clarence Davis [wa]s the father of Claimant," J.A. at 27, but also because she otherwise found clear and convincing proof of Davis's paternity both in the record and in Floyd's "very credible" testimony at the hearing. J.A. at 29. Indeed, the evidence before the ALJ revealed that, from the time of Dustin's birth, Davis acknowledged Dustin as his son; that Davis told his mother, his many siblings, and his other children that Dustin was his son; that Davis often bought food, clothes and other items for Dustin because he loved Dustin; that Floyd told her parents as well as Tommy Walters that Dustin was probably Davis's son; that Walters himself thought that Dustin was Davis's son; that Davis sought custody of Dustin, not Floyd's other children, when Floyd was incarcerated for forgery; that Davis tried to talk Floyd into legitimizing Dustin many times before Floyd was incarcerated; that Davis had custody of and supported Dustin for approximately two years before he died; that Dustin called Davis "Daddy", albeit he also called Walters "Daddy"; that, when Dustin asked Floyd and Davis who his daddy was, both Floyd and Davis told him that Davis was his father; and that Dustin looks like Davis's sister, Cindy. Based upon the evidence presented to her, the ALJ concluded that, whether or not Dustin was the biological child of Davis, Tennessee law gave Dustin the same right as a child to share in Davis's intestate personal property, and—for that reason if for no

other—Dustin qualified as Davis's "child" for purposes of the Black Lung Benefits Act.

## V.

▇ We find no basis in the record for disturbing the Board's affirmance of the ALJ's award of benefits to Dustin. There is no suggestion that the Board exceeded its statutory scope of review of the ALJ's determinations, and we find no error of law. Furthermore, like the Board, we find that the ALJ's determinations as to paternity were supported by substantial evidence in the record.

We reject Tennessee Consolidated's argument that the ALJ relied exclusively on the Bledsoe County Juvenile Court's legitimation order. She did not. As she stated in her order, "this court in its own review of the record has not found any reason to doubt the genuineness of the actions of the decedent, Clarence Davis, or the very frank, and credible testimony of Claimant's mother, Donna Floyd, in this proceeding." J.A. at 29. Indeed, without the legitimation order, the evidence before the ALJ was at least as strong as, if not stronger than, the evidence of paternity found to be clear and convincing in *McDowell* and *Majors*.

To be sure, the evidence did not include the results of a DNA test, which—perhaps—would have conclusively established whether Davis was or was not Dustin's biological father. At the time of the legitimation proceeding, neither parent requested such a test, both having acknowledged Davis's parentage. Moreover, Tennessee Consolidated did not request such a test when first given the opportunity to do so. In fact, when Tennessee Consolidated failed altogether to respond to the district director's show cause order, granting all parties thirty days to submit evidence why black lung benefits should not be awarded to Dustin, the district director concluded that Tennessee Consolidated had tacitly accepted liability for payment of benefits, and he entered an order to that effect. Only later, after Tennessee Consolidated appealed the district director's order and the case was remanded to the district director for lack of jurisdiction, did Tennessee Consolidated request DNA testing. The ALJ denied the request, noting— among other things—that DNA testing was not necessary to a determination of Dustin's eligibility or entitlement to benefits under the Black Lung Benefits Act, given that eligibility could be established by one who was not a child of the deceased miner but who nonetheless had "the same right as a child to share in the beneficiary's intestate personal property." 20 C.F.R. § 725.208(d). The Board affirmed the ALJ's denial of Tennessee Consolidated's motion for DNA testing, finding no abuse of discretion on the ALJ's part where "Tennessee Consolidated did not proffer evidence to support and/or demonstrate that its request for an examination [wa]s reasonable under the circumstances and [wa]s based on a valid question necessitating the examination, but merely asserted its unsubstantiated opinion that an examination was necessary." J.A. at 20.

▇ Like the Board, we are not persuaded that Tennessee Consolidated was "entitled" to an order compelling DNA testing in this case. Tennessee Consolidated cites to a Tennessee statute, T.C.A. § 24–7–112, governing the admissibility of paternity tests in state court proceedings; however, the admissibility of evidence in this case is not governed by Tennessee law but is, instead, governed by federal law. The Board determined—and we agree— that, as a matter of federal law, it was within the ALJ's discretion to refuse Tennessee Consolidated's request for DNA testing.

Furthermore, the case cited by Tennessee Consolidated, *White v. Armstrong,* Case No. 01A01–9712–JV–00735, 1999 WL 33085, at *5 (Tenn.Ct.App. Jan.27, 1999), does not support its argument for DNA testing. In *White v. Armstrong,* a Tennessee appellate court held that a father, who at one time agreed to the entry of a legitimation order, was later entitled to post-judgment relief based upon genetic testing which excluded the possibility that he was the child's biological father. The court in *White v. Armstrong* did not hold that an outsider to a legitimation proceeding was entitled to use the results of genetic testing to challenge a legitimation order. Nor did the *White* court hold that an outsider to a legitimation proceeding could use the results of genetic testing to negate the effect of the Tennessee law which provides that, for purposes of intestate succession, a person born out of wedlock shall be considered a child of the father if "[t]he paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof." T.C.A. § 31–2–105 (1994). As the ALJ correctly noted, the Black Lung Benefits Act does not require a claimant to be the biological child of the putative father; it requires only that the claimant "have the same right as a child to share in the beneficiary's intestate personal property." 20 C.F.R. § 725.208(d). Because Tennessee Consolidated has cited no authority to suggest that Dustin would NOT "have the same right as a child to share in [Davis's] intestate personal property" even if genetic testing now proved that Dustin was not Davis's biological child, this court cannot say that the ALJ abused her discretion in denying Tennessee Consolidated's motion to compel DNA testing.

## V.

Having concluded that the ALJ's determinations were supported by substantial evidence and that the Board committed neither legal error nor exceeded its scope of review, we AFFIRM.